[Civ. No. 4897. Third Appellate District.—October 7, 1933.]

MRS. E. C. STOCKWELL et al., Respondents, v. EQUITABLE FIRE AND MARINE INSURANCE COMPANY OF PROVIDENCE, RHODE ISLAND (a Corporation), Appellant.

J. F. Riley for Appellant.

J. Oscar Goldstein for Respondents.

THOMPSON, J.—The defendant insurance company has appealed from a judgment, which was rendered against it pursuant to the verdict of a jury, in a suit upon a fire insurance policy for the total loss by fire of a dwelling-house and furniture. It is contended a previous arbitration and appraisal of the property which was made pursuant to the provisions of the policy is binding upon the insured and renders the judgment ineffectual and void.

The plaintiff, Mrs. E. C. Stockwell, was the owner of a dwelling-house at Chico of the value of approximately $4,500, together with furniture of the value of about $500. There was also a garage situated on the premises. The Butte County Savings Bank held a mortgage on the premises, upon which there was an unpaid balance of $1627.81. This mortgage was assigned to plaintiff, Bank of America. On December 8, 1929, the Equitable Fire and Marine Insurance Company of Providence, through its local agent, issued a three-year policy of insurance to Mrs. Stockwell, subject to the mortgagee's interest as it appeared. By the terms of this policy, the building was insured for $3,750. The furniture was insured for $500, and the garage was insured for $250. July 28, 1931, the dwelling-house and furniture were practically destroyed by fire. The garage was not burned. There is no contention that fraud was exercised in procuring the insurance. No misrepresentation is charged in valuing the property for the purpose of insurance. While there is

some conflict with regard to the question as to whether the building was totally destroyed by fire, two experienced and responsible contractors testified that the fire resulted in a total loss. Mr. Smith said: ''I consider it (the dwelling-house) a total loss. . . . There is not anything about the building that I would use in the construction of another building. . . . Part of the outside walls are standing and a little bit of the floor is standing, and the floor is burned underneath, and the upper floor is gone entirely. . . . The roof is entirely gone. Q. How about the building as it stands, can it be repaired? A. Absolutely no.''

Mr. Erwin testified in that regard: ''I found that building there to be what I would call a total loss.''

The insurance policy contains the usual standard statutory insurance clause with respect to arbitration and appraisal, as follows:

''If the insured and this company fail to agree in whole or in part, as to the amount of loss within ten days after such notification, this company shall forthwith demand in writing an appraisement of the loss or part of loss as to which there is a disagreement and shall name a competent and disinterested appraiser, and the insured within five days after receipt of such demand and name, shall appoint a competent and disinterested appraiser and notify the company thereof in writing, and the two so chosen shall before commencing the appraisement, select a competent and disinterested umpire.

''The appraisers together shall estimate and appraise the loss or part of loss as to which there is a disagreement stating separately the sound value and damage, and if they fail to agree they shall submit their differences to the umpire, and the award in writing duly verified of any two shall determine the amount of such loss.''

Within the time prescribed by the contract, the insured on September 14, 1931, presented to the company her verified itemized proof of loss, in which she claimed a total loss of the dwelling-house valued at $3,750, which was the full amount for which it was insured, and all her furniture, which she valued at $466.90. She demanded full compensation therefor. Pursuant to the terms of the policy, the company, on September 30th, notified the insured in writing of its disagreement regarding her valuation of both the

dwelling-house and the furniture but acknowledged its liability for the loss of the building in the sum of $2,000, and of the furniture in the aggregate sum of $116.73. This amount of compensation was rejected by the insured. Appraisers were subsequently appointed in the manner provided by the above-quoted clause of the policy. The insurance company named Ira W. Coburn as its representative. The mortgagee bank named, and the insured approved, the appointment of Merrick W. Evans as their representative. Louis Van Vlack was selected by the two previously named appraisers to act as an umpire in the appraisement of the property. All three appraisers took the oath and qualified. Subsequently, without notice to, or the presence of the insured, or anyone representing her interest, or of the umpire, the two appraisers, Coburn and Evans, met at the site of the burned property and agreed upon fixing the loss of the building at $1956. The loss of furniture was fixed at the total sum of $146.25. This appraisement was subsequently reduced to writing, signed by the two appraisers and served upon the insured who promptly rejected the offer as an illegal, unfair and inadequate appraisement of her loss. Suit upon the policy was then instituted by the plaintiffs. The complaint alleges that the appraisement of the property was procured illegally and unfairly by means of fraud and collusion, and without notice to the insured or opportunity to present to the appraisers proof of the character or value of the real or personal property which was destroyed by fire. The cause was tried by a jury which was fully and fairly instructed regarding the issues of the case, including the effect of the alleged arbitration and appraisal of the property. No objections are made to the instructions which were given to the jury. A verdict was returned in favor of the plaintiffs for the sum of $4,216.90. Judgment was rendered accordingly. From this judgment the defendant has appealed.

The appellant contends that the judgment is not supported by the evidence; that the plaintiffs are bound by the award of damages fixed by the appraisers; that the judgment fails to pass upon the validity of the award of the appraisers, and that the court erred in rejecting testimony which was offered by the insurance company.

■ We are of the opinion the evidence sufficiently supports the judgment based upon implied findings of the jury that the award of the appraisers is void for the reason that it was illegally procured by means of implied fraud, without notice to the insured and without opportunity for her to furnish the appraisers with proof of the character or value of the real or personal property which was destroyed. Circumstances were adduced at the trial from which the jury was warranted in inferring that the appraisers acted in collusion, to the detriment of the insured, and that the appraiser, Evans, was dominated and controlled in the fixing of damages by his associate, Coburn. In spite of the fact that one of the attorneys representing the insured instructed Mr. Evans to visit the site of the fire prior to the arbitration and secure all the data respecting the character and value of the property destroyed, and report this information back to them, this appraiser admitted at the trial: "I talked to Mr. Bybee; he told me to go down and figure it up and to get all the data together and I guess he instructed me to bring it to him and I didn't. I never talked to him again until after the appraisement was made."

It further appears that no notice was given to the insured or to anyone representing her by the appraisers or by the defendant, of the time and place of making the appraisement and fixing the award. Neither the insured, the mortgagee nor anyone representing them or either of them was present at the time of the appraisement, nor were they ever given an opportunity to offer proof to the appraisers of the character or value of the real or personal property which was destroyed by fire. The appraiser, Coburn, appears to have directed the entire proceeding, suggested the figures and dictated the terms of the proposed award. He did all the writing in the document by the terms of which the appraisement was made. Evans admitted at the trial that he had no knowledge of the value of the furniture, and that the aggregate sum of $116.73 in compensation therefor was arbitrarily placed in the award by Coburn with the statement that he could duplicate the entire lot of furniture for that sum. There is evidence that this sum was not written in the award at the time Evans signed the document. Van Vlack, who had been appointed and qualified as umpire of the arbitration, was not notified of the time of appraise-

ment. He was not present, and he was not called upon by the appraisers to participate in the determination of values or to take part in the transaction. After the two appraisers had arbitrarily met and fixed their award, Coburn notified Van Vlack that his services would not be required. It is true that any two of the appraisers were authorized to fix the amount of the award. ▮ Evans testified at the trial that he did finally accept the figures of Coburn respecting the value of the real and personal property, but there is evidence from which the jury was warranted in assuming that Evans never did agree to the amount of $116.73 which was placed in the award as the value of the furniture destroyed. This being true, it may not be said the award represents a valid agreement respecting the value of the furniture, by any two appraisers, such as is contemplated by the arbitration clause of the policy. Under such circumstances the award would be invalid for failure to submit the disagreement respecting the value of the furniture to the umpire. At least there is evidence of its invalidity for failure to furnish the insured with notice of the appraisement, or to afford her the opportunity of supplying proof of the character and value of the real and personal property which was destroyed.

▮ Arbitration is the submission for determination of a disputed matter to private unofficial persons selected in the manner provided by law or by agreement of the parties. It is said the appraisers partake of the nature of experts and the board of inquiry constitutes an informal *quasi* court for the determination of the contested matter. In the absence of procedure on the part of the appraisers which is contrary to law or the specific stipulations of the parties, or conduct which prejudices the substantial rights of the parties, their award will be binding. Any conduct which amounts to fraud or which results in depriving either of the parties of a fair and impartial hearing to their substantial prejudice may be grounds for setting the award aside. While the hearing and the method of adducing evidence is informal, it is absolutely essential that the parties should have the opportunity of fairly presenting evidence of their respective claims. In 5 C. J. 84, section 175, it is said in that regard:

"It may be stated as a general proposition, that parties are always entitled to a hearing before the arbitrators, and, although arbitrators are not bound by strict rules of evidence, they cannot transgress that fundamental principle of justice which declares that no man shall be condemned without the opportunity of being heard. The parties are entitled to a hearing upon all the matters submitted. 'The injustice is the same, and the injury as great, to deprive one of a right without a hearing before arbitrators as before a court.' And the right is one which no statute can be so construed as to abrogate. So the fact that the arbitrators in denying the parties a hearing acted in perfect good faith, merely mistaking their duty in this respect, in no way affects the question of the rule. The parties may, of course, waive their right to a hearing by an express agreement. But nothing short of plain and clear words will be sufficient for that purpose."

█ It is ordinarily necessary to the validity of an award by arbitration and appraisal that the interested parties shall have notice of the hearing of the board and a fair opportunity to present competent proof of the character and value of the property which is involved therein. (*Curtis* v. *Sacramento*, 64 Cal. 102 [28 Pac. 108, 109]; 3 Cal. Jur. 62, sec. 23; 2 R. C. L. 379, sec. 25; 5 C. J. 86, sec. 179; 7 Cooley's Briefs on Insurance, 6202, sec. 3 [1].) In the authority last cited it is said:

"A refusal by the appraisers to give insured an opportunity to present to them the facts as to his loss renders the award invalid. . . . And it has been held that a mere failure to give insured notice of the meeting, so as to permit him to introduce his evidence, would have the same effect."

In the Curtis case, above cited, the court quotes with approval from the opinion of the United States Supreme Court in *Lutz* v. *Linthicum*, 8 Pet. (U. S.) 178 [8 L. Ed. 904], as follows:

"Without question due notice should be given to the parties of the time and place of hearing the cause, and if the award was made without such notice, it ought upon the plainest principles of justice to be set aside."

Section 1288 of the Code of Civil Procedure clearly contemplates the giving of a notice of the hearing of an arbitration board and of the affording of an opportunity for

the interested parties to furnish proof of their claims. That section of the code provides that an award may be vacated:

"(c) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehaviors, by which the rights of any party have been prejudiced."

There are cases which hold that this service of notice may be waived by the interested parties. Other cases uphold awards which were made without specific notice on the ground that the appraisers were possessed of all the material evidence of the character and value of the property involved, and that the owner was, therefore, not harmed by failure to notify him of the time and place of the hearing of a board of arbitration.

In the present case notice of the hearing was not waived by the insured. Upon the contrary the record indicates that she expected to be given an opportunity to be heard. Her attorney instructed their appraiser, Evans, "to get all data together", and bring it back to them. Certainly common justice would require that the insured should have an opportunity to furnish proof of the character, condition and value of her household furniture which was insured for $500 before appraisers arbitrarily awarded but the sum of $116.73 for its loss. Evans admitted that he knew nothing about the furniture or its condition or value. The furniture was entirely destroyed by the fire. Neither of the appraisers ever saw the furniture, or talked with the owner about its character, condition or value. Evans admitted that he accepted Coburn's value of the furniture upon his assurance that he could replace the whole lot for that sum. But it is apparent that Coburn had no knowledge of what sum the furniture could be replaced for, in the absence of personal knowledge regarding its identity, condition or character.

Under the circumstances of this case, we are satisfied the insured should have been afforded an opportunity to furnish the appraisers with proof of the character and value of the property which was destroyed by fire, and that the award is therefore invalid. There is ample evidence to support this implied finding of the jury.

■ The appellant contends the judgment should be reversed for the reason that the court failed to specifically find that the award is void for lack of notice, or because the insured was not afforded an opportunity to offer proof of the character and value of the property which she lost by fire, or that the award was procured by fraud.

Specific findings upon these subjects were not required in the present case. The cause was instituted as a plain suit based upon the contract of the insurance policy. The invalidity of an alleged award of damages was incidentally injected into the cause as an issue. The validity of the award became a matter of defense on the part of the insurance company, since arbitration was only necessary when the insurance company disputed the proof of loss. The case was tried with a jury. The issue regarding the invalidity of the award was presented to the jury under adequate instructions by the court. A general verdict was rendered in favor of the plaintiffs. This verdict implies that the issues regarding the validity of the award were determined by the jury adversely to the defendant. Further specific findings of the court are unnecessary.

■ It is asserted that although the award of compensation for the furniture may be illegal for lack of notice or opportunity on the part of the insured to show its character and value, still the award for the loss of the building is not subject to the same infirmity and therefore should be approved as valid, since it may readily be severed from the award as a whole. We are of the opinion the entire award is invalid for the reasons heretofore given. Moreover, the case was tried on the theory that the award was either valid or invalid as a whole. There was no attempt at the trial of the case to sever the award and determine its validity with respect to the value of the dwelling-house as separate and distinct from that of the furniture. The verdict of the jury was for the gross sum of $4,216.90. The jury was not asked to segregate its award, and it made no effort to do so. Under the circumstances of this case, there is no merit in the contention that the award should be segregated and held to be valid in part.

■ Finally, it is claimed the court erred in excluding from the jury certain evidence tending to show that the fire occurred from incendiary origin, that the house was

permitted to remain vacant prior to the fire, contrary to the provisions of the policy, and that the insured had some knowledge of the cause of the fire which she was not permitted to disclose.

There was no error in excluding this evidence. The pleadings in this case raise neither the issue of a fire occurring from incendiary origin nor the vacancy of the house contrary to the provisions of the policy. The answer set up neither of these issues as a defense to the suit. Far from denying a liability upon the policy on these grounds, the company conceded in a written statement which was sent to the insured on September 30, 1931: "This company admits on the property set forth in said purported preliminary proof of loss the following amount of loss only, viz.: On building $2,000.00." The defendant made no real effort at the trial to prove that the fire occurred from incendiary origin. It was sufficiently established by the evidence that the insured had no knowledge or belief regarding the cause of the fire. On cross-examination she testified in that regard: "Q. Now I will ask you the question, do you know how the fire started? A. No." Her son also testified in that regard: "Q. Did either one of you know anything about the cause of the fire? A. Not one single thing." There was no prejudicial error in sustaining the objection to the further question propounded to the insured, as to whether she had any information regarding the cause of the fire.

The only evidence tending to show an opportunity on the part of anyone to set the fire is that the insured frankly admitted the house was vacant for several months before the fire occurred. Mrs. King, a neighbor who resides across the street from the property in question, testified at length without objection that she had seen a man about the place one night, a week or so before the fire occurred, and that he parked a green Essex automobile on the premises while he placed some curtains at the windows. The son of the insured was subsequently called as a witness by the defendant. He frankly admitted that he owned a green Essex automobile which he drove to his mother's premises at 8 o'clock one evening about two weeks before the fire occurred and parked it on the premises while he put up some shades at the windows. It was not charged in the answer or otherwise that the fire was of incendiary origin. That was not an

issue in the case. No serious effort was made at the trial to prove that theory. The objections were properly sustained.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1933.