[Civ. No. 4345. Fourth Dist. Oct. 23, 1951.]

E. J. CECIL, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Respondents.

Crossland & Crossland and C. E. H. Maloy for Appellant.

Stammer & McKnight and Bronson, Bronson & McKinnon for Respondents.

BARNARD, P. J.—This is an appeal from an order refusing to disqualify an arbitrator.

On January 10, 1947, the appellant transferred certain farms to the Western Frozen Foods Company, Inc. with a

written agreement and guaranty that Western would realize a certain amount from the operation of the farms by December 31, 1948. This agreement was secured by a pledge of 49,076 shares of stock in the Kingsburg Cotton Oil Company which were owned by Cecil. The agreement provided that any disputes would be submitted to arbitration, each party to appoint an arbitrator and these two selecting a third. This agreement and the pledged stock were assigned by Western to the Bank of America as security for a loan.

The farms failed to produce the guaranteed profits and a demand was made upon Cecil to make good on his guaranty. Claiming that the farms had not been properly operated Cecil, on March 2, 1949, demanded an arbitration as to his liability, and appointed Milo Erwin as his arbitrator. Cecil was then in control of the Kingsburg Cotton Oil Company, and its chief officer. Erwin was employed by that company, and was Cecil's chief assistant and his personal friend. On March 23, 1949, Western, with the approval of the bank, appointed C. Ray Robinson as its arbitrator. Robinson was recommended to Western because of his experience in farming. On May 5, 1949, Cecil, in writing, protested this appointment on the ground, among other things, that Robinson "is, and has been, an attorney for the bank" and that he "has been appointed for the purpose of, and intends to act as, an advocate and attorney in said arbitration rather than an arbitrator."

On October 7, 1949, Cecil filed a petition in which he prayed that the court should appoint "a third arbitrator to act in said arbitration with the respondents, Milo Erwin and C. Ray Robinson." On April 14, 1950, Cecil and Western signed a written stipulation reciting that Erwin and Robinson had been appointed as arbitrators and providing, among other things, that "the two arbitrators heretofore appointed" should within 30 days appoint a third arbitrator; that in the event "said two arbitrators" could not agree upon a third, such appointment should be made by the court; that "said three arbitrators" should commence hearings within 30 days; and that certain issues should be submitted to "the two arbitrators already appointed and the third to be selected as hereinbefore provided." To this stipulation was attached an agreement signed by the bank, by Western and by Cecil that the bank should be bound by any award made and finally confirmed by the court. This stipulation was filed in court on August 24, 1950.

On June 2, 1950, Western petitioned the court for the

appointment of a third arbitrator. After a hearing the court appointed several arbitrators, all of whom refused to act. On November 3, 1950, Cecil filed a petition seeking to have the court remove Robinson as an arbitrator upon the ground that he "is the attorney for the Merced Branch" of the bank and that he "intends to act as an advocate and champion of" the bank. Among other things, Western filed a cross-petition asking the court to appoint a third arbitrator. After a hearing, at which numerous and lengthy affidavits were presented, the court ruled in favor· of the respondent and entered an order denying the petition to remove Robinson, or to enjoin him from acting, and appointing a third arbitrator.

Cecil has appealed from that part of this order which denied his application for the removal of Robinson. The appeal is based upon the contention that it must be held, as a matter of law, that an attorney for one of the parties to an arbitration is disqualified from acting as an arbitrator; that bias and prejudice must be presumed and implied; and that any showing of actual bias or prejudice is immaterial and unnecessary. It is argued that this is the common law rule, which is applicable here since we have no statutory provisions fixing the qualifications of arbitrators. In support of the rule contended for the appellant cites *Gonzalez* v. *Gonzalez*, 174 Cal. 588 [163 P. 933] ; *Sumner* v. *Barnhill*, 12 N.S. 501 (Nova Scotia) ; *Wheeling Gas Co.* v. *City of Wheeling*, 5 W.Va. 448 ; *American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.*, 240 N.Y. 398 [148 N.E. 562] ; and *Schwartzman* v. *London & Lancashire Fire Ins. Co.*, 318 Mo. 1089 [2 S.W.2d 593]. It is argued that an attorney is the agent of his client and bound to act for him, and that these cases establish the rule that it is against public policy to permit anyone to so act who might be under a temptation or any tendency to favor the party appointing him. The respondent contends that a showing of bias and prejudice was here essential, and that no such showing was made. It relies on such cases as *First National Bank* v. *Clay*, 231 Iowa 703 [2 N.W.2d 85] ; *Goodrich* v. *Hulbert*, 123 Mass. 190 [25 Am.Rep. 60] ; *McQuaid Market House Co.* v. *Home Ins. Co.*, 147 Minn. 254 [180 N.W. 97] ; *Riccomini* v. *Pierucci*, 54 Cal.App. 606 [202 P. 344]. In the Goodrich case, it is said: "To hold, as a matter of law, that a member of the bar is disqualified to act as an arbitrator, merely because he has formerly been of counsel for one of the parties, would be an imputation upon the uprightness and good faith of the profession." In the Riccomini case, the court said: "It is a

well settled rule that, to justify setting aside a general award of arbitrators, there must be partiality or corruption upon their part. The relation of attorney and client is not such that it is conclusive evidence of partiality when the client acts as arbitrator in a matter in which his attorney happens to appear as counsel for one of the parties.'' In the Clay case it is said: ''Choosing arbitrators wholly disinterested is an admirable standard to aspire to, but the parties seldom do that, and if all awards were set aside in which it was not done, few awards would stand.''

█ We are unable to hold that a disqualification here appeared which, as a matter of law, required the court to remove Robinson as an arbitrator. No such fixed rule as that contended for has been established in this state. In the absence of abuse, the matter has long been left to the agreement of the parties. In any event, the question as to whether some such rule should be strictly applied necessarily depends upon the factual situation in a particular case. Several questions of fact were here presented which the court decided in favor of the respondent.

█ The appellant contends that the bank, rather than Western, was the real party in interest since Western had assigned the pledged stock to the bank, and the bank had later sold the stock. It appears from the evidence that the bank sold this stock because conditions had developed making this advisable, but that it was still holding the proceeds as security for Western's debt. The bank admitted that it was so holding this money, and agreed to be bound by the result of the arbitration when the award becomes final. While the bank has a certain security interest, Western is the real party in interest. The appointment of Robinson, while approved by the bank, was made by Western in accordance with a right given it by the arbitration agreement.

The appellant contends that Robinson has been and now is the attorney for the bank, and that it was, and is, the bank's intention that he shall act as its advocate. Mr. Maloy, one of the attorneys for the appellant, stated in his affidavit that on September 7, 1950, he talked with George D. Schilling, an attorney for the bank, at his office in San Francisco; that Schilling told him that Robinson ''has been our attorney for years''; that he expressed the opinion to Schilling that if this was true Robinson was disqualified; that Schilling replied that he did not believe this made any difference; that Schilling further said that Robinson had been appointed and was to act

for the bank as its advocate and attorney in this arbitration proceeding; that he suggested to Schilling that he himself might be appointed arbitrator for Cecil in the place of Erwin; and that Schilling stated that he would have no objection to that being done. While Schilling did not directly deny some of the statements thus attributed to him, his affidavit gives a somewhat different version of that conversation. He stated that he told Mr. Maloy that Robinson was not a regularly employed or retained attorney for the bank; that he did occasional legal work for the bank; that the bank did not have much litigation in Merced County and had had only occasional legal matters during the last 10 or 15 years; and that the bank had employed other attorneys in Merced during that period. The affidavit of Robinson states, among other things, that he has from time to time represented the bank in certain estate and guardianship matters referred by him to the bank; that another lawyer in his office was then, in November, 1950, handling a small claim and delivery action for the bank; that other than this there has not been a single piece of business referred to him since 1944, which originated with or was initiated by the bank; that there has been no employment or payment of any fees on strictly bank business; and that on two occasions during that time he has represented Cecil or a copartnership in which Cecil was a partner. He further denied that he intends to act as an advocate or champion for the bank in the arbitration proceeding, or that the bank intends to use him as such. If it be assumed that Schilling told Maloy that Robinson was to act for the bank "as its advocate and attorney," there is no evidence in the record that Robinson had any such intention .

A further consideration is the fact that the appellant acquiesced in the appointment of Robinson, and expressly assented thereto, over a considerable period of time after he had raised these same objections. On May 5, 1949, he protested the appointment of Robinson in writing, stating that he believed that Robinson was the bank's attorney and intended to act as its advocate rather than as an arbitrator. Eleven months later he entered into a stipulation, later filed in court, agreeing to Robinson as an arbitrator. On two other occasions, in October, 1949, and in June, 1950, when the appointment of a third arbitrator was raised in court he made no objection to Robinson. In view of all of the evidence, his present contention that he had no actual knowledge of the facts until he was told of Maloy's conversation with Schilling

in September of 1950, is not very convincing. Long after he was informed of the facts he relies on, and believed them, he stipulated in court that Robinson should continue with the arbitration. On the ground of waiver alone the record discloses strong support for the order made.

This arbitration was one provided for by a written agreement, each party being given the right to appoint an arbitrator, with no limitation as to his qualifications. Cecil selected Erwin, a personal friend and close business associate. Western selected Robinson, who had had some professional association with the bank, which was only indirectly interested in the matter. Under the existing circumstances it cannot be said, as a matter of law, that a disqualification existed. The court properly treated the question as a factual one and received and considered all of the evidence offered, including that having a bearing on any actual bias or prejudice. The record sustains the implied finding in that connection, and the order which was made.

The order appealed from is affirmed.

Griffin, J., concurred.

A petition for a rehearing was denied November 15, 1951, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1951.