[Civ. No. 5304. Fourth Dist. May 28, 1956.]

E. J. CECIL, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Appellants.

Samuel B. Stewart, Robert T. Shinkle, Stammer, McKnight & Barnum and Bronson, Bronson & McKinnon for Appellants.

Crossland, Crossland & Richardson, William C. Crossland, Loeb & Loeb and Herman F. Selvin for Respondent.

MUSSELL, J.—On or about January 10, 1947, plaintiff and W. B. LeValley transferred certain farms to defendant Western Frozen Foods Company, Inc. (hereinafter referred

to as ''Western''), with a written agreement and guaranty that Western would realize a certain amount from the operation of the farms. The agreement was thereafter assigned to defendant Bank of America National Trust and Savings Association (hereinafter referred to as the ''Bank'') as security for an indebtedness owed to the Bank by Western. The agreement provided that any dispute which might arise under its terms should be submitted to arbitration by a three-member board of arbitrators; one to be appointed by Cecil, one by Western, and the third by the two arbitrators appointed by the parties. The agreement further provided that ''The decision of a majority of said arbitrators shall be final and conclusive upon the parties.''

A dispute arose between Western and Cecil as to the amount owed Western by Cecil under the agreement and it was submitted to arbitration pursuant to the arbitration clause in the agreement and a stipulation between the parties. Cecil appointed Milo Erwin as one of such arbitrators and Western appointed C. Ray Robinson. These two arbitrators were unable to agree upon a third member of the board, following which John A. Willey was appointed by the court. On November 6, 1950, Cecil filed a petition seeking the removal of Robinson as an arbitrator. The trial court denied this petition and its order was affirmed on appeal by this court in *Cecil* v. *Bank of America,* 107 Cal.App.2d 38 [236 P.2d 408].

On April 14, 1950, Cecil and Western entered into a stipulation to the effect that Western and the Bank claim that there was due from the guarantors as of December 31, 1949, the sum of $133,764.18; that the guarantors denied that there was any sum due; that the arbitrators should proceed and determine the amount due from the guarantors; whether the farms were properly operated, and if not, the amount of profits thereby lost; and whether the fault was chargeable to Western or to the guarantors. Hearings were then held by the arbitrators and on June 15, 1953, the matter was submitted to them for decision. Meetings of the arbitrators were then held, which culminated in the signing, on July 19, 1954, by Willey and Erwin, but not by Robinson, of the award here involved. Willey and Erwin decided that $112,932 was due Western or the Bank from the guarantors without reference to the breach of the agreement by Western or the Bank; that the properties were improperly operated and that the lost profits were $157,997.63; that the failure

to properly farm the properties was wholly chargeable to Western and that there was nothing due from the guarantors. On October 8, 1954, Cecil filed with the court an application for an order confirming the award of July 19, 1954. Western and the Bank filed an opposing motion to vacate the award. These motions were heard together and on January 24, 1955, and on May 10, 1955, the court made its orders confirming the award and denying the motion to vacate it. Western and the Bank appeal from these orders and contend that the award is invalid because it is not that of the full board of arbitrators; that it was determined at two meetings held without notice to Robinson and without his presence; that Willey and Erwin refused to acquaint Robinson with the bases of their award and that Robinson was excluded from its preparation.

The first deliberative meeting of the arbitrators was held on September 16, 1953. Willey stated in his deposition that they had previously decided that the best procedure would be for the three of them, separately, to go through the transcript and briefs and make up items to be discussed; that he prepared notes and figures for the meeting and that Erwin had a similar list; that he read his notes to Robinson and that Robinson took notes therefrom; that no final computations were made at this meeting, although some of them may have been final from an accounting standpoint; that there was no decision at this meeting as far as he and Erwin were concerned as to either the amount due from Cecil or the amount of any lost profits. Erwin testified that figures were presented at this meeting pertaining to the accounting and also as to the matter of lost profits by reason of poor farming operations; that these figures were shown to Robinson and he joined in the discussion concerning them.

Robinson states in his affidavit that the accounting issues were discussed; that Erwin and Willey agreed that Western's claim should be reduced to approximately $112,000 but that he did not agree with this deduction; that it was agreed that there was no merit in any of Cecil's contentions with respect to bad farming with the possible exception of one ranch. No decision was arrived at by the arbitrators at this meeting and they met for their second deliberative session on December 2, 1953. Willey testified that at that time he had computed the figure of $157,997.63 as lost profits and that there was no discussion of that amount at the meeting;

that he believed Erwin had a rough totalized figure; that they did not arrive at any figure of lost profits but discussed various bases; that the matter of responsibility for the poor farming was discussed throughout the meeting but that no definite figure for lost profits was agreed upon; that at the conclusion of the meeting Robinson stated to Willey and Erwin, in effect, "To hell with it. You two go ahead and prepare your award, send it to me and I will either sign it or do something else." In this connection Erwin testified that just before Robinson left the meeting he "Concluded his remarks by saying to Mr. Willey and I, 'You men prepare your findings and send it up to me. I will either agree with it or disagree with it,' some words to that effect." On cross-examination he testified that Robinson said " 'You two men get together'; that he did not say 'You hold a meeting,' but that he did tell us to get together, come to our conclusions, and send it to him." These statements attributed to Robinson were denied by him in an affidavit filed herein.

On January 13 and 14, 1954, Willey and Erwin, without notice to Robinson, met and discussed the evidence and arrived at a final decision of the issues. When asked why he had not phoned to Robinson advising him of the meeting, Willey stated that he felt "It would be useless"; that Robinson had instructed them to go ahead and prepare an award; that he had been in complete disagreement with them on the basic principles involved in the arbitration and that "He had indicated to us so that I, at least, felt that he would not discuss any of the items, the smaller items, involved in making up the total, in arriving at a total figure."

Following this January meeting, Willey prepared and signed a proposed award. He forwarded it to Erwin and Robinson with a letter asking them to sign it before a notary public if they agreed with it, and if not, to attach their findings and award to one copy and return it to him. Before this proposed award was signed, Western requested that the matter be argued orally before the arbitrators. This was agreeable to all concerned and the matter was argued on July 12, 1954, before all three arbitrators. On July 16, 1954, the arbitrators held their final deliberative session and Robinson was notified and attended the meeting. There was further discussion of the figures arrived at by Willey and Erwin and Robinson was told that they had met and discussed these figures in January. He disagreed with the conclusions

which had been reached by Willey and Erwin and asked for the supporting figures, but these were not furnished him. He also asked that detailed findings be placed in the award showing the individual items comprising the award, to which Willey replied that they were unnecessary and would be too much trouble. Robinson stated that there was no basis whatever for the findings of Willey and Erwin and left the meeting. Willey then prepared the award based on final computations made at the January meeting and he and Erwin signed it, on July 19, 1954. On July 29, 1954, Willey mailed this award to Robinson for his approval or disapproval. On August 3, 1954, Robinson wrote Willey and requested a breakdown of the award figures and Willey replied that the figures had been discussed generally and asked Robinson to forward to him the executed copy of the award with either his assent or dissent. On September 3, 1954, Robinson wrote to Willey, in part, as follows: "I am returning the findings and award proposed by you, which I have not signed. Enclosed also is the original and one copy of my objections in the matter." Willey returned to Robinson the document containing Robinson's objections and stated that he questioned whether it should be filed but that Robinson could file it if he so desired. On or about September 13, 1954, Willey delivered the final award to the attorneys for Cecil.

Appellants state in their closing brief that this appeal is based upon the point that the arbitration was void because the third arbitrator was excluded from the deliberations. The assertion that Robinson was excluded from the deliberations is not supported by the record. He attended and participated in the meetings of September 16 and December 2, 1953. He attended the oral arguments with the parties on July 12th and the final meeting of the arbitrators on July 16, 1954. All of these meetings were held prior to the execution of the award on July 19, 1954. Erwin and Willey met on January 13 and 14, 1954. Robinson was not notified of this meeting and was not present. However, there is evidentiary support for the trial court's finding that at the previous meeting of December 2, 1953, Robinson stated, in effect, "To hell with it. You two go ahead and prepare your award, send it to me and I will sign it or do something else"; and that this statement was intended by him to mean and did mean that he withdrew from further discussion; and that by such statement he instructed Erwin and Willey, without

further notice to him, to prepare their figures for an award. Willey and Erwin could and apparently did reasonably consider that it was "useless" to notify Robinson of the January meetings at which they prepared the figures upon which the final award was based. They followed Robinson's instructions and thereafter Willey prepared and signed a proposed award and forwarded it to Erwin and Robinson with instructions to sign it if they agreed and if not, to attach their findings and award to one copy and return it to him. This was not the final award and was not signed by Erwin or Robinson. Thereafter, by agreement of the parties, the matter was argued before all of the arbitrators on July 12, 1954. The record is silent as to the nature of the arguments there presented but it is reasonable to infer that all of the issues were there fully discussed on the basis that no final award had then been made. On July 16, 1954, the final deliberative session of all the arbitrators was held and the record shows that Robinson was not in accord with the figures submitted by Erwin and Willey and that the three arbitrators could not agree on the terms of the award. Willey then prepared the final award, which he and Erwin signed on July 19, 1954, and it was mailed to Robinson on July 29, 1954. Robinson did not sign the award and submitted his written objections thereto. Since the arbitration agreement provided that the decision of a majority of the arbitrators should be final and conclusive upon the parties, it was not necessary that Robinson execute it.

In *Griffith Co.* v. *San Diego College for Women,* 45 Cal. 2d 501, 509 [289 P.2d 476], where one of the arbitrators had announced his refusal to sign the award and dissented therefrom, it was held that it was not necessary that he be present when the two others sign. And in *American Eagle Fire Ins. Co.* v. *New Jersey Ins. Co.,* 240 N.Y. 398 [148 N.E. 562, 563, 565], it was held that it was not the rule that one arbitrator may by wilful absence prevent an award by a majority; that all should meet and hear the proofs but that the report of two is valid, unless the third has been excluded from participation in the deliberations without fault on his part and that the withdrawal of one of the arbitrators on the threshold of a formal award does not end the authority of the other two. While it is stated in 6 Corpus Juris Secundum, Arbitration and Award, section 75(2), that an award signed by two arbitrators, without notice to the third, and without giving him an opportunity to be present at the execution of

the award is void, the record here shows that Robinson was present at the final meeting of the arbitrators and there had ample opportunity to express his conclusions and participate in the procedings, and to prepare and submit a different award if he so desired. He disagreed with the final conclusions of the other arbitrators and it does not appear that further discussion would have resulted in a different award. In 6 Corpus Juris Secundum, Arbitration and Award, section 67, it is said:

". . . (t)he refusal of one or a minority of a number of arbitrators, having authority to render a majority award, to proceed further with the hearing or discussion of the case, after a disagreement has arisen, does not divest the majority of power to proceed, in the absence of the minority, with the hearing and to render an award in accordance with their authority."

We conclude that the failure to give Robinson notice of the January meeting, under the circumstances shown, did not vitiate the final award made.

The orders denying the motion to vacate the award of the arbitrators and confirming it are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 19, 1956, and appellants' petition for a hearing by the Supreme Court was denied July 24, 1956.