[Civ. No. 17492. First Dist., Div. One. June 23, 1958.]

DON C. FALLOON, Respondent, v. CALEDONIAN INSUR-
ANCE COMPANY, Appellant.

[Civ. No. 17566. First Dist., Div. One. June 23, 1958.]

CALEDONIAN INSURANCE COMPANY, Appellant, v.
DON C. FALLOON, Respondent.

Bert W. Levit, Victor B. Levit and Long & Levit for Appellant.

Bernard Allard and Leon G. Seyranian for Respondent.

WOOD (Fred B.), J.—These are appeals from (1) an order appointing an umpire to determine the amount of fire loss under a policy of insurance issued to Don C. Falloon by

Caledonian Insurance Company (No. 17492), (2) an order denying a motion to vacate the appraisal of a fire loss sustained by the insured (No. 17566), and (3) from a subsequent order which denied a motion to vacate the order mentioned in clause (2) above (No. 17566). The appeals mentioned in clauses (1) and (3) above, must be dismissed because taken from nonappealable orders* but the points raised by the appellant company are available for review upon the appeal mentioned in clause (2).

Rugs and linoleum belonging to the insured were damaged by smoke. He and the company failed to agree as to the amount of the loss.

This brought into play provisions of the policy which declare that if the parties fail so to agree, each shall ''select a competent and disinterested appraiser'' who shall ''select a competent and disinterested umpire.'' If the appraisers fail for 15 days to agree upon an umpire, the umpire shall be selected upon the request of the insured or of the company, by a judge of a court of record in the state in which the appraisal is pending. The appraisers shall then appraise the loss. If they fail to agree they shall submit their differences to the umpire. An award in writing of any two of the three shall determine the amount of the loss.

To serve as appraisers, the insured appointed Robert W. Elfving and the company appointed Ben B. Smith. The appraisers failed for 15 days to agree upon an umpire. Upon ex parte application of the insured an order was made by the superior court appointing an umpire. That order was held invalid for lack of notice to the company. (*Caledonian Insur-*

---

*We need not, for this purpose, decide whether this is an arbitration proceeding governed by sections 1280-1293 of the Code of Civil Procedure or a proceeding that comes within the general equity jurisdiction of the court, for neither of the orders mentioned in clause (1) or in clause (3) qualifies as an appealable order under section 1293 or under section 963 of the code.

Concerning the nonappealability of an interlocutory order in an arbitration proceeding, see *Sjoberg* v. *Hastorf*, 33 Cal.2d 116 [199 P.2d 668]. It is true that in *Cecil* v. *Bank of America*, 107 Cal.App.2d 38 [236 P.2d 408], an appeal from an order refusing to disqualify an arbitrator was entertained. However, it does not appear that the question of appealability was presented to the court for consideration. Furthermore, it does appear that appellant Cecil had asked that an allegedly interested arbitrator be removed or be enjoined from acting. It is conceivable, therefore, that the reviewing court may have treated it as an appeal from an order refusing to grant an injunction.

As to the nonappealability of an order denying a motion to vacate an appealable order, see *Mather* v. *Mather*, 22 Cal.2d 713, 720 [140 P.2d 808], and *Knox* v. *Knox*, 129 Cal.App.2d 795, 797 [277 P.2d 854].

*ance Co.* v. *Superior . Court,* 140 Cal.App.2d 458 [295 P.2d 49].)

Thereafter the insured filed a new petition for appointment of an umpire. The company filed an answer. After trial of the issues thus framed, the court appointed Wilbur J. McDaniel as umpire, finding him capable and qualified; also finding Ben-B. Smith and Robert W. Elfving duly appointed, qualified and acting appraisers.

After the loss was appraised, the company moved to vacate the award upon various grounds. This motion after a hearing was denied.

Our examination of the record convinces us that none of the asserted defects or irregularities operated to vitiate any phase of the judicial proceedings involved or the appraisal and that the order refusing to vacate the appraisal should be affirmed.

. (1) *Did the evidence show as a matter of law that Mr. Elfving, the appraiser appointed by the insured, was not disinterested? No.*

█ Mr. Elfving was in the employ of Walton Moore, selling goods for Moore upon a commission basis. At the time of Elfving's appointment in November, 1955, the insured was one of 100 to 150 of Moore's customers to whom Elfving sold on behalf of Moore, but he had made no sales to the insured since January, 1956. Our attention has been directed to no evidence that the insured was still a customer or potential customer of Moore. There is evidence that since January, 1956, Elfving has not been assigned by Moore to territory in which the insured's business is located. Elfving testified repeatedly that he could act in a fair-minded manner as to both parties. These facts do not establish disqualification as a matter of law. (See *Cecil* v. *Bank of America,* 107 Cal.App. 2d 38 [236 P.2d 408].) This is unlike the case of the stockholder deemed disqualified to act as umpire because his firm became an agent of one of the parties to the arbitration after his appointment as umpire and before the arbitration. (*Schwartzman* v. *London & Lancashire Fire Ins. Co.* (1927), 318 Mo. 1089 [2 S.W.2d 593].)

In its closing brief in Number 17492 appellant cites *Petition of Dover Steamship Co.,* 143 F.Supp. 738, as holding that it is incompetent under the Federal Arbitration Act for a federal court to determine the disinterestedness of an appraiser or arbitrator until after the making of the award. It invokes that case as authority for the contention that in our case the

trial court prematurely decided the qualifications of Mr. Elfving.

We do not find the Dover Steamship ruling applicable, especially in view of the fact that in that case the arbitration agreement (in contrast to the appraisal agreement in this case) did not require an arbitrator or an appraiser to be "disinterested."

■ Where, as here, the appraisal agreement requires each party to appoint a "disinterested" appraiser and authorizes either party to apply to a court for the appointment of a "disinterested umpire" if the appraisers fail to agree upon such an umpire, it would seem quite appropriate in any such proceeding for either party to raise the question of disinterestedness of an appraiser. ■ The parties are rightfully in court for the appointment of an umpire. The question whether the parties have appointed disinterested appraisers would seem reasonably relevant to the question whether the court should presently exercise its power of appointment; i.e., if the question is raised by either party. Why wait until the award has been made and then vacate it because one of the appraisers lacked the quality of disinterestedness from the very date of his appointment?

This does not necessarily mean that a party must raise such a question at this stage or be foreclosed from later raising it, nor does it mean that a finding of disinterestedness made at this stage of the proceeding precludes a party from later questioning the disinterestedness of an appraiser upon the basis of facts occurring subsequent to the date of such a finding.

We conclude it was quite proper for appellant to question the disinterestedness of Mr. Elfving at the time it did and for the court to decide that question as of that time in the proceeding for an appointment of umpire.

(2) *In the proceeding for the appointment of the umpire did the court abuse its discretion when it denied appellant a continuance? No.*

■ Several continuances were granted in response to appellant's requests therefor. On May 7, 1956, appellant's counsel said he would be ready within 10 days. On May 29 the matter came on for trial. The court examined the issue of the bias of respondent's appraiser. On June 1 appellant filed a notice of motion to continue to June 25. At the June 6 hearing, counsel did not move that the case not be heard on that day, but stated that he wanted further hearings post-

poned to June 11, or, apparently, if that was not possible, to the 25th. The matter was actually concluded on the 6th as to Mr. Elfving's qualifications, so there was no necessity for naming another day on which to proceed. It appears that counsel had ample opportunity to prepare for the trial of the issues which he himself had raised in the proceeding. He has made no showing that starting the examination of Mr. Elfving on May 29 and continuing and completing it on June 6, prevented him from presenting any evidence material to the issues.

(3) *In the proceeding for appointment of an umpire, was appellant's examination of witnesses unduly curtailed? No.*

■ The asserted curtailment pertained to questions that had been asked and answered several times and two questions which at most would have elicited evidence that would have been merely cumulative.

Appellant also sought a continuance for the purpose of examining certain witnesses whom it had not interviewed and concerning whose testimony it made no offer of proof. Indeed, it was unable to make any offer of proof.

We perceive therein no error, prejudicial or otherwise.

(4) *In the appraisal process, were appellant's rights to notice and an opportunity to present evidence violated? No.*

■ Appellant claims it was prejudiced by the asserted failure to give it formal notice of a meeting of the umpire and the appraisers held on July 7, 1956. There is some question whether it was entitled to notice and an opportunity to present evidence (see *Sapp* v. *Barenfeld,* 34 Cal.2d 515, 521-522 [212 P.2d 233]), a question we need not decide. As early as July 4 counsel for appellant knew that such a meeting was imminent and wrote a letter to the appraisers and the umpire setting forth appellant's contentions in the matter. Moreover, counsel knew two weeks before the award was made that the July 7 meeting had taken place and could have interposed any afterthoughts he had in the matter during those two weeks. His failure to do so did not invalidate the award.

Appellant relies upon *Stockwell* v. *Equitable F. & M. Ins. Co.,* 134 Cal.App. 534 [25 P.2d 873]. It is not applicable because of elements of collusion there involved. Incidentally, the court in that case recognized that notice is not always essential, saying "[t]here are cases which hold that this service of notice may be waived by the interested parties." (P. 542.) Nor is *Stockton etc. Works* v. *Glen's Falls Ins. Co.,*

98 Cal. 557 [33 P. 633], applicable. There the court set aside an award because there had been no true appraisal.

Moreover, appellant did not allege any facts from which it could be inferred that it was prejudiced by the asserted failure to give notice. (See Code Civ. Proc., § 1288 and *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 240-241 [174 P.2d 441].)

(5) *Did the failure to acknowledge the award render it fatally defective? No.*

In an arbitration proceeding, any party may apply for confirmation "within three months after the award, . . . which award must be in writing and acknowledged or proved in like manner as a deed for the conveyance of real estate. . . ." (Code Civ. Proc., § 1287.)

■ The award was evidenced by a letter of July 24, 1956, from the umpire to appellant. The writer's signature was not acknowledged or otherwise proved at the time. Without seeking such proof appellant on August 1, 1956, filed its petition to vacate the award.

We do not think the lack of acknowledgment or equivalent proof was fatal here. Such proof would serve the purpose of giving the parties assurance that the acknowledged document is indeed the award and start the time within which either party might petition to confirm the award. Appellant apparently considered it had sufficiently reliable information to justify its initiation of a proceeding to vacate the award. And, as it happened, during the course of that proceeding, both the umpire and respondent's appraiser filed affidavits stating that this was in fact their award.

Moreover, lack of some of the elements of a formal certification or authentication is not one of the situations in which the statute declares a court "must" vacate an award. (Code Civ. Proc., § 1288.)

Under these circumstances we perceive no prejudice to appellant's rights. Had appellant chosen to disregard the award, and later claimed the lack of acknowledgment as a defense to a demand to act under the award, the demand conceivably might be found premature.

(6) *Was the award fatally defective because not originally signed by appraiser Elfving? No.*

■ In the award signed by the umpire he declared that he concurred in the findings made by appraiser Elfving. Elfving made and filed in this proceeding his affidavit that he submitted his findings in writing to the umpire and that they

were his honest and disinterested appraisal of the loss suffered by respondent. We think this cured any defect that may have flowed from Elfving's failure to sign the award in the first instance. (Our discussion of point (5) applies here.)

(7) *Did the failure of appraiser Smith (appointed by appellant) to participate in the appraisal infect it with invalidity? No.*

From the affidavits presented by appellant and respondent, respectively, it reasonably appears that appraiser Smith had notice of the July 7 meeting, had no excuse, such as illness or other engagement, for not appearing, and voluntarily chose not to appear. The law can not suffer appellant to take advantage of such a refusal by its own appointed appraiser to participate and thus utterly frustrate the entire appraisal proceeding.

(8) *Did the umpire have power to act in the absence of the company-appointed appraiser? Yes.*

Appellant directs attention to that portion of the insurance policy which says that *"the appraisers* shall then appraise the loss, stating separately the actual cash value at the time of loss and the amount of loss, and *failing to agree shall submit their differences* to the umpire. An award in writing of any two shall determine the amount of the loss.'' (Emphasis added.)

Appellant says that its appraiser was not given an opportunity to agree or disagree with the other appraiser, and would have us conclude that the event never occurred which conferred upon the umpire the power and duty of acting. The fallacy of this argument is the fact that it overlooks the finding (expressed in an opinion filed by the trial judge and amply supported by the evidence) to the effect that the appraiser appointed by appellant "arbitrarily and unfairly" refused to act with the appraiser appointed by the respondent. (Our discussion of point (7) applies here.)

(9) *Did the person originally named as umpire fail to accept his appointment as umpire? No.*

The order appointing an umpire designated one Wilbur McDaniel as such but added a proviso that if he declined or failed to act then one Harry Polse was appointed as alternate to act in the place of McDaniel.

McDaniel wrote the court he would be unable to serve. On the same day Polse wrote the court that he would accept the appointment "upon notification." Two days later McDaniel revoked his refusal to act. Subsequently and on July 5, 1956,

the court wrote Polse (sending copies to the appraisers and to counsel for the parties) referring to McDaniel's revocation of his refusal and stating that "Mr. McDaniel by his acceptance and pursuant to the order previously made, will act as umpire in this matter." Groundless, therefore, is appellant's contention that Polse replaced McDaniel as umpire and that the latter's participation in the appraisal process was without authority.

(10) *Was appellant erroneously and prejudicially denied the right to produce witnesses and to cross-examine respondent's affiants upon the hearing of its motion to vacate the award? No.*

 Appellant initiated the proceeding to vacate the appraisal or award by means of a written "motion to vacate" setting forth most of the grounds discussed in paragraphs (1) to (9) of this opinion. This notice declared that "said motion will be based upon this notice, petition of Caledonian Insurance Company, affidavit of Victor B. Levit, affidavit of Ben B. Smith, and memorandum of points and authorities in support of motion to vacate award, copies of which are served herewith." No mention was made of intent to use oral testimony or to examine any witnesses.

The engrossed statement on appeal states that the following occurred at the hearing on the motion: "Mr. Levit stated that, after looking over the affidavits served and filed in opposition to the Petition, he wished to cross-examine the persons who signed such affidavits and to produce oral testimony in support of said Petition, but that he was not then and there immediately prepared to produce any such oral testimony." In the order denying the motion to vacate the award the court declared "[i]t was not indicated that the motion would be based upon oral testimony, and none has been received."

Appellant contends that it was a "denial of appellant's right to a fair hearing" not to receive oral evidence. This contention is overruled upon the ground that there is no showing in the record that competent evidence was offered at the hearing of the motion and rejected. The engrossed statement indicates that counsel merely requested a delay to some later date. There is nothing in the record to indicate what that evidence might have been so as to enable a court to form a conclusion as to whether its exclusion was prejudicial. It may well have been cumulative of the evidence in the affidavits and unnecessary to a decision of even the factual disputes.

We conclude that it was within the trial judge's discretion to refuse appellant's nebulous request. (See *People* v. *Kirk*, 109 Cal.App.2d 203, 209 [240 P.2d 630]; *Muller* v. *Muller*, 141 Cal.App.2d 722, 731 [297 P.2d 789].)

The order denying the motion to vacate the appraisal or award is affirmed. The appeals from the other two orders are dismissed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a rehearing in No. 17566 was denied July 23, 1958, and its petition for a hearing in this case by the Supreme Court was denied August 21, 1958.