Laura FISCH, Appellant,

v.

TRANSCONTINENTAL INSURANCE COMPANY, Appellee.

No. 13912.

Court of Civil Appeals of Texas.

Houston.

March 22, 1962.

Rehearing Denied April 12, 1962.

Al Crystal & The Kempers, Houston, T. M. Kemper, Houston, of counsel, for appellant.

Bryan & Patton, Julietta Jarvis, Houston, for appellee.

WERLEIN, Justice.

This suit was brought by appellant on an insurance policy issued by appellee, to recover loss resulting from fire damage to her home at 2510 Calumet Street, Houston, Texas, on September 14, 1958. On December 17, 1958 appellant entered into an appraisal agreement with appellee. On or about June 15, 1959, J. W. Northrup, the appraiser appointed by appellee, and the umpire, Wylie W. Vale, without the appraiser appointed by appellant joining therein, made and signed an award for appellant in the sum of $7,201.92. Prior to the date of the award, but apparently with knowledge of what it would be, appellant filed suit on June 1, 1959, to recover the loss, alleging that it exceeded the policy coverage of $20,000.00.

After hearing appellant's case and the testimony of the umpire, the trial court discharged the jury and rendered judgment for appellee in the amount of the award. Appellant asserts that the court erred in doing so because as a matter of law the award in question was invalid and did not conform to the provisions of the policy, and also because fact issues were raised with respect to the award which, if found favorably to appellant, would justify setting it aside.

The memorandum of appraisal, Defendant's Exhibit No. 1, shows that on December 17, 1958 appellant and appellee respectively appointed E. W. Osterloh and J. W. Northrup to appraise the actual cash value of the property and the amount of loss directly caused by the fire. On March 5, 1959 said appraisers committed themselves under oath to make an appraisal and award, and they appointed Wylie W. Vale as umpire to settle any matters of difference between them. On the same day said umpire accepted the appointment and stated under oath that he would act with strict impartiality in all matters of difference submitted to him and would make a true, just and conscientious award.

The policy provides:

"The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this Company, shall determine the amount of actual cash value and loss."

Appellant contends that the award of June 15, 1959 is invalid because made by one of the appointed appraisers and the umpire without any showing that there was a failure of the appraisers to agree or that they had any differences which were submitted to the umpire, and because without such disagreement and differences existing the umpire had no authority to act.

Neither Mr. Osterloh nor Mr. Northrup was called to testify. The record is silent as to whether they ever met and discussed the value and damage, or whether there were any differences between them or whether they failed to agree, or whether or not Mr. Osterloh ever appraised the property, or refused to act. There is no evidence of his activities after the time he accepted the responsibility of acting as an appraiser.

Mr. Vale, called as a witness by appellee, testified that he personally inspected the premises and thereafter met with Mr. Northrup and they arrived at the actual cash value of the house and the pine trees before the fire; that Northrup first talked to him about being an appraiser in the case; that he personally went to the premises at least three times; that he increased Northrup's figure as to damages to the shingle roof; that he and Northrup resolved whatever differences there were and

arrived at the total figure of $7,201.92; that he did not know Mr. Osterloh; that Osterloh was not present at any time that he and Northrup were together, nor when he and Northrup figured out $7,201.92, and that Osterloh and Northrup never did at any time submit any differences to him.

He further testified as follows:

"Q What difference did you resolve as the umpire between Mr. Osterloh and Mr. Northrup?

"A Mr. Osterloh never did submit it to me.

"Q You didn't resolve any differences?

"A No, sir.

"Q So you and Northrup got together between the two of you and made the appraisal that is, this $7,-201.92?

"A Mr. Northrup made one and after checking it concurred that was our best knowledge.

\*   \*   \*   \*   \*   \*

"Q Well, in effect, other than the few items you added you merely endorsed Northrup's appraisal, isn't that the effect—

"A In effect, yes, sir."

On cross-examination appellant testified that she did not know Mr. Osterloh or Mr. Northrup or Mr. Vale and never talked to Osterloh; that she made no request of Northrup or of Vale to appear before them, and as far as she knew, her lawyer did not do so; and that her only complaint was that the building could not be restored for the amount of the award.

There is authority to the effect that if one of the appraisers resigns or deliberately refuses to act, the other appraiser and the umpire may make an award. In re Appointment of Falloon, 1958, 161 Cal. App.2d 522, 327 P.2d 18; German Ins. Co.

v. Hazard Bank, 31 Ky.Law Rep. 1126, 104 S.W. 725. See also 6 Appleman on Insurance Law & Practice, p. 366, where it is stated: "If one appraiser or arbitrator resigns, withdraws, or refuses to act further, it has been held that the other one and the umpire may complete the proceeding and make a valid award." In the instant case there is nothing to show that Osterloh resigned or deliberately refused to act as an appraiser. Therefore, we cannot sustain the award on such ground. True, the award is not invalid on its face since it complies with the policy requirement to the extent of being an award in writing "of any two".

■ The general rule is that every presumption will be indulged in favor of an award unless contradicted by proof. Providence Washington Ins. Co. v. Farmers Elevator Co., Tex.Civ.App., 141 S.W.2d 1024; Robbs v. Woolfolk, Tex.Civ.App., 224 S.W. 232; Green v. Franklin, 1 Tex. 497. Appellant asserts that there is evidence which destroys such presumption in this case and which invalidates the award as a matter of law. This contention requires an analysis of the evidence.

■ There is no evidence as to whether Osterloh and Northrup did or did not fail to agree as to the loss. If they did not fail to agree, there was nothing to submit to the umpire and nothing upon which he could act. If they did fail to agree, then they were required by the policy to submit their differences only to the umpire. There is nothing in the policy giving the umpire the right to act in the absence of differences between the appraisers. The record is silent as to whether there were any differences. The umpire testified that no differences were submitted to him and that he resolved no differences between the appraisers. There is no evidence to the contrary. Since the umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him, we are of the opinion that the award, which was signed by only one appraiser and

the umpire who had no authority to act, is invalid. See 6 Appleman on Insurance Law & Practice, p. 368, where it is stated:

"Where the policy provided that the appraisers should submit their differences to an umpire, it was held that the signature of the umpire was without validity unless and until the two appraisers failed to agree. * * * An umpire may act to settle differences between appraisers respecting the amount of a loss, when such differences become known to him. But an umpire, appointed to decide on matters of difference only, has no authority to pass on matters concerning which there was no difference between the appraisers. The function of an umpire who is to act in matters of difference only is not to coincide with one or the other of the appraisers, but he is to make his award independently of such estimates. * * But where the umpire did not confer with the insured's appraiser, the appraisement was held to be ineffective."

An appraiser's acts in excess of the authority conferred upon him by the appraisal agreement is not binding on the parties. North River Ins. Co. v. Adams, Tex.Civ.App., 300 S.W. 185, writ ref.; Reliance Ins. Co. v. Bowen, Tex.Civ.App., 54 S.W.2d 597. It has also been held that an award which is not made substantially in compliance with the requirements of the policy will not be sustained. Reliance Ins. Co. v. Bowen, supra; Carr v. American Ins. Co., D.C., 152 F.Supp. 700; Continental Ins. Co. v. Garrett, 6 Cir., 125 F. 589.

In her third point appellant asserts that the court erred in taking the case from the jury and rendering judgment for appellee, because fact issues were raised which should have been submitted to the jury. Appellant alleged in her petition that she is not bound by the purported award because the arbitration and proceedings therein were not fairly and impartially conducted, because appellee's appraiser and the umpire entered into an award which is so grossly inadequate and unfair as to clearly evidence bad faith or mistake and because the award was the result of bias, carelessness or an improper investigation.

In determining whether it was proper for the court to take the case from the jury and render judgment, we must view the evidence in the light most favorable to appellant, the losing party. White v. White, 1943, 141 Tex. 328, 172 S.W.2d 295. We must indulge against the action of the court every inference that may properly be drawn from the evidence and if the record reflects any testimony of probative force in favor of the losing party, we must hold the court's action improper. Texas Employers Ins. Ass'n v. Boecker, Tex.Civ.App., 53 S.W.2d 327, error ref.; Clutter v. Wisconsin Texas Oil Company, Tex.Civ.App., 233 S.W. 322, error ref.

The evidence shows that Mr. Northrup called the umpire, Mr. Vale, and that the two got together and arrived at the figure of $7,201.92; that Vale didn't know Osterloh and that Osterloh was not present at any time that the umpire and Northrup were together, and was not present when the award was made; that Osterloh and Northrup did not at any time submit any differences to the umpire, and the umpire resolved no differences between them; that the umpire checked Northrup's appraisal and concurred in it after increasing Northrup's figure on damages to the shingle roof; and that in effect the umpire merely checked and endorsed Northrup's appraisal, other than a few items, without talking to Osterloh or having any consultation with him, or having the benefit of any appraisal that might have been made by Osterloh.

The evidence further shows that both Northrup and Vale are architects and that Vale has not been in the construction business since 1952; that Northrup approached Vale about being an appraiser in this case and that Vale had known Northrup a great number of years; that on October 5, 1958 appellant's witness, Ray O. Wilson, a building contractor, who was requested to make

a bid, made an appraisal and estimate of the cost of repairing the building; that Wilson's estimate made in the hope of getting the job, was $14,318.59 after deducting from his original estimate certain excluded items; that appellant's witness Carpenter would have testified, as shown by appellant's bill of exceptions, that his estimated cost of making repairs to the building in 1958, based on the items listed in an appraisal made in January or February, 1959, showing in detail what work had to be done, was approximately $16,380.00.

The great disparity between the amount of the award and the cost of making repairs to the building as testified to by appellant's witnesses, might not in itself be sufficient to warrant setting aside the award. Gulf Insurance Co. of Dallas v. Pappas, Tex.Civ. App., 73 S.W.2d 145; Camden Fire Insurance Ass'n v. McCain, Tex.Civ.App., 85 S.W.2d 270, writ dism.; Pacific American Fire Underwriters of Liverpool & London & Globe Ins. Co. v. Atkinson, Tex.Civ.App., 83 S.W.2d 441. Such great disparity, however, is a circumstance that may be considered in connection with the other evidence showing that the umpire never consulted with appellant's appraiser at any time, and that he and Northrup apparently wholly ignored such appraiser and acted independently of him; that the umpire in effect merely checked and endorsed Northrup's appraisal, other than for a few items, in arriving at the figure of $7,201.92; that no differences between the appraisers were submitted to the umpire as required by the policy, and that the umpire did not resolve any differences between the appraisers.

We are not called upon to decide whether such evidence would be sufficient to support findings that the proceedings were not fairly and impartially conducted or that the award was the result of bias, bad faith or mistake. We merely hold that such evidence is of some probative force and raises fact issues which should have been submitted to the jury with respect thereto.

■ In view of our holding, we think it unnecessary to discuss appellant's other points, but we shall do so briefly since some of the questions raised by appellant may arise upon another trial. We do not agree with appellant that the award was not properly itemized. The house and the trees are separately listed and the actual cash value and amount of loss to each of such items are separately shown. Nor do we think appellee's pleading can be construed as a judicial admission of the invalidity of the award. Appellee's plea in abatement was overruled and the allegations in its subsequent pleadings are in the alternative. A defendant has the right to plead inconsistent defenses. Houston, E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S.W. 531, 537. Dallas Ry. & Terminal Co. v. Hendricks, 1942, 140 Tex. 93, 166 S.W.2d 116; 2 McDonald, Texas Civil Practice, p. 611, § 7.01.

■ The exclusion of some of appellant's pictures showing damage to the building might not constitute reversible error, since the damage to the building was testified to in great detail and some of the pictures showing damage were admitted. Rule 434, Texas Rules of Civil Procedure. Some pictures were excluded because the witness testified that there was more damage inside the house at the time the pictures were taken than immediately after the fire. We do not consider it necessary to show the date the pictures were taken if the witness having knowledge of the facts or conditions testifies that the pictures correctly or substantially reflect such facts or conditions, and points out and explains any changes that may have occurred. Dofner v. Branard, Tex.Civ.App., 236 S.W.2d 544, writ ref., n. r. e.; Texas Employers Ins. Ass'n v. Agan, Tex.Civ.App., 252 S.W.2d 743, writ ref.; Taylor, B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868; Dallas Ry. & Terminal Co. v. Durkee, Tex.Civ.App., 193 S.W.2d 222, writ ref.; n. r. e.; Davis v. Illinois Terminal Railroad Co., Mo., 307 S.W.2d 395.

 Appellant complains that the court erred in refusing to permit her witnesses to testify as to the reasonable cost of repairs and replacements to her residence within one or two years after the date of the fire. The policy provides:

"* * * liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss * * *."

Upon another trial the witnesses should be allowed to testify as to what it would cost to repair or replace the property at different times after the loss, unless the time is too remote as a matter of law. We cannot say that one or even two years after the loss would be unreasonable as a matter of law. Ordinarily what is "reasonable" is a question of fact.

With evidence as to the cost of repairs at the time Mr. Wilson made his appraisal and estimate on or about October 5, 1958 and evidence as to what such cost would be at subsequent dates not too remote as a matter of law, due to increased cost of repairs, the jury would be in a position to determine what the cost of the repairs and replacements would be if made within a reasonable time after the loss, deducting or excluding therefrom, as provided in the policy, loss caused directly or indirectly by neglect of the insured to use all reasonable means to save and preserve the property at and after the loss. See Aycock v. Republic Insurance Co., La.App.1959, 116 So.2d 317, 74 A.L.R. 2d 1267, and annotation.

 The policy provides:

"The amount of loss for which this Company may be liable shall be payable 60 days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided."

We construe this provision to mean that if the award is found to be valid, payment would not be due until 60 days after the award was filed with the company, and in such case interest would begin to run at such time and continue until the award is paid or payment is tendered. If the award is invalid as a matter of law or if the jury should find against the award, then interest would begin to run on the amount of the loss 60 days after proof of loss was received by the company. Pennsylvania Fire Ins. Co. v. W. T. Waggoner Estate, Tex.Com.App., 1931, 39 S.W.2d 593, 596, and authorities cited.

Judgment reversed and cause remanded.