## HOME INS. CO. v. WALTER. (No. 8480.)

(Court of Civil Appeals of Texas. Dallas.
March 19, 1921. Rehearing Denied
April 30, 1921.)

1. **Insurance ⇐⇒574(7)—Arbitration set aside only on clear evidence of fraud, mistake, or accident.**

The award of appraisers under an arbitration provision of a fire insurance policy may be set aside only upon clear evidence that it was the result of fraud, mistake, or accident, that is, that it was made by appraisers who were incompetent, interested, or partial.

2. **Insurance ⇐⇒574(7)—Evidence held not to show that appraiser was incompetent, interested, or partial; "competent."**

In suit to set aside award of appraisers of loss under a fire insurance policy, evidence *held* not to show that the insurer's appraiser was incompetent, interested, or partial, as "competent," when generally applied to arbitrators, does not mean "expert."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Competent.]

3. **Insurance ⇐⇒574(2) — No notice of appraisers' meeting required.**

An award of appraisers under a fire insurance policy and arbitration contract was not invalidated by their failure to give insured notice of their meeting, where there was no provision in the policy or the arbitration agreement for such notice, and no proof that insured requested permission to come before the appraisers and make any statement or offer any evidence.

4. **Insurance ⇐⇒574(2)—Award of appraisers unaffected by fact that umpire did not participate in appraisers' deliberations until after disagreement between them.**

Where the arbitration clause of a fire insurance policy and an arbitration agreement between the parties did not require the umpire to continuously participate in the appraisal from the beginning, but provided that he was to act only in matters of difference between the appraisers, the fact that the umpire did not participate in the deliberations of the appraisers until after disagreement between them arose did not affect the validity of the award.

Error from District Court, Hill County; Horton B. Porter, Judge.

Suit by L. H. Walter against Home Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

Thompson, Knight, Baker & Harris and Will. C. Thompson, all of Dallas, for plaintiff in error.

Dupree & Crenshaw, of Hillsboro, for defendant in error.

HAMILTON, J. Defendant in error brought this suit for the purpose of setting aside an award made by appraisers appointed and acting under the provisions of an arbitration contract and of a fire insurance policy issued upon a truck by plaintiff in error and for the recovery of a greater sum than allowed by the appraisers' award.

The policy was issued on August 9th, 1918, to expire at the end of a year from that date, and covered $2,300 value on the truck. On · the 1st day of July, 1919, the truck was practically destroyed by fire. On the 27th day of August thereafter two appraisers and an umpire qualified to act under an arbitration agreement containing the following:

"Witnesseth, that D. D. Harris and Sam McDonald shall appraise and ascertain the sound value of and the loss upon the property damaged and destroyed by the fire of July 1st, 1919, as specified below: Provided that the said appraisers shall first select a competent and disinterested umpire who shall act with them in matter of difference only. The award of any two of them made in writing, in accordance with this agreement, shall be binding upon both parties to this agreement as to the amount of such loss.

"It is expressly understood that this agreement and appraisement is for the purpose of ascertaining and fixing the amount of sound value and loss and damage only, to the property hereinafter described, and shall not determine, waive or invalidate any other right or rights of either party to this agreement. The property on which the sound value of the loss or damage is to be determined is as follows, to wit: One Republic 2-ton truck, factory No. 48887, motor·No. 6584.

"It is further expressly understood and agreed that in determining the sound value and the loss or damage upon the property, hereinbefore mentioned, the said appraisers are to make an estimate of the actual cash value thereof, at and immediately preceding the time of the fire; and in case of depreciation of the property from use, age, condition, location, or otherwise, a proper deduction shall be made therefor."

The policy contained the following clause providing for appraisal:

"In the event of disagreement as to the amount of loss or damage the same must be determined by competent and disinterested appraisers before recovery can be had hereunder. The assured and this company shall each select one, and the two so chosen shall then select a competent and disinterested umpire. Thereafter the appraisers together shall estimate and appraise the loss or damage, stating separately sound value and damage, and failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss or damage; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

---

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

A limitation of liability was written into the policy in this language:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the assured to repair or replace the same with material of like kind and quality; such ascertainment or estimate shall be made by the assured and this company, or, if they differ, then by appraisers as herein provided. It shall be optional with this company to take all or any part of the property at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice within 30 days after the receipt of sworn statement of loss herein required of its intentions to so do; but there can be no abandonment to this company of the property described."

D. D. Harris, of Dallas, was the appraiser selected by the insurance company under the appraisal agreement above quoted, and Sam F. McDonald, of Hillsboro, was the appraiser selected thereunder by Walter. The appraisers, after qualifying, met only once to make an appraisal, and this meeting occurred on the day after they qualified to act. They disagreed and thereupon called in the umpire. The principal item of disagreement seemed to be as to the sound value of the truck just before the fire. Harris contended that it ought to be estimated at $1,500, and McDonald insisted that it ought to be placed at $2,000. After the umpire was called in, and the matter was discussed with him, and after he acquired information from the appraisers as to the initial cost, and as to how long the truck had been used, and, also, after inspecting what remained of the truck and examing the tires as to wear, indicating the extent of use, he asserted that the sound value ought to be $1,800. Each of the three thus having a view as to this feature different from the respective views of the others, Harris suggested that they were too far apart to get together except "to give and take." He proposed that the sum be fixed at $1,600, Corbett proposed that it be fixed at $1,800. Finally McDonald offered to agree upon $1,-800, but Corbett was induced by Harris to yield still further and come down to $1,650. Upon this figure Harris and Corbett agreed, and also agreed upon $1,250 as the amount of award; but McDonald refused to sign the appraisal, which Walter also refused to accept, and filed this suit, alleging substantially that Harris was incompetent and interested; that he was the insurance company's partisan; that he refused to hear material and necessary evidence upon which to base a just appraisal; that he refused to permit Walter to present evidence; that the umpire did not participate until after a disagreement arose, and was not present during the discussion between the appraisers prior thereto; that the umpire was incompetent, being inexperienced with trucks; that the umpire heard no evidence, but yielded to the biased persuasion of Harris; and, that the amount found for sound value was grossly inadequate. Allegations of the value of the truck, and of the damage, as well as other proper allegations unnecessary to name, were made. Plaintiff in error answered by demurrers and denial, and set up the provisions of the policy, specially pleading the provision for appraisal, and also the actual appraisal had thereunder, and its results.

A trial was had before the court and a jury. The cause was submitted upon special issues which the jury found favorable to defendant in error, and judgment conforming to the findings was rendered, canceling and setting aside the appraisers' award, and awarding Walter $1,800.

Plaintiff in error requested in substance that the court instruct the jury to return a verdict in defendant in error's favor for $1,-250, with interest at the rate of 6 per cent. per annum from 60 days after August 28, 1919, for the reason that the undisputed evidence showed that a valid and binding award of such amount on that date had been made in conformity with an arbitration agreement made subsequent to the fire, and as provided by the policy sued on, and that by such award defendant in error's right of recovery had been determined. We have concluded that the evidence, under the authorities by which we are to be guided, is insufficient to support any other finding except that the appraisers' award was valid and binding upon defendant in error.

[1] Unless the evidence clearly established that the award was the result of fraud, mistake, or accident, or to state it another way, was made by appraisers who were incompetent, interested, or partial, then it must be sustained. "The law favors arbitrations, and every reasonable intendment will be indulged in support of them," and a party to an arbitration agreement may not refuse to be bound by the award merely because he disagrees with the appraisers' judgment.

[2] The inference that Harris was incompetent, interested, and partial in his acts as appraiser can be based upon no evidence other than that briefly stated below. The record contains none, unless it be it, which in the remotest way tends to establish such inference. That evidence was as follows:

Harris, the appraiser selected by the insurance company, was engaged in the business of renting automobiles in Dallas, where he had pursued this business four or five years. He was not an automobile mechanic. He received from the insurance company's

agents before he went to Hillsboro to act as appraiser "the complete file" relating to the matters he was to pass upon. The agents said to him as they gave him the file, "Here are all the facts." He had some figures with him when he went to Hillsboro. There were three sets of them. He got them from the insurance company. Among them were the figures of P. K. Manning, who testified for plaintiff in error at the trial, and whose testimony would authorize a smaller award than that made. Manning was the only highly qualified expert who testified as to values and cost of repairs. Harris paid for a drink for himself and one for the other appraiser at a confectionery store while they were engaged upon the appraisement. McDonald, the other appraiser, proposed to pay, and Harris replied that he would pay for them; that it was insurance money he was spending. Harris testified that he received no pay from the insurance company until after the appraisement. The appraisal provision in the policy was that each party to it should pay the appraiser "respectively selected by them." After Harris and McDonald disagreed, the latter suggested that a Mr. Caperton be called in as umpire to decide the matter. Harris would not agree because "he (Caperton) would naturally think more of his trucks than he would of anybody's else." Then Harris asked McDonald "who that was riding a nice saddle horse around here," and McDonald told him it was probably Mr. Corbett. Harris asked how he would do for umpire. McDonald replied, "He suits me, but he doesn't know anything about trucks." Harris answered that they didn't need anybody who knew anything about trucks or automobiles. McDonald, after the disagreement arose, suggested that they call in and receive the statement of a former owner of the truck upon the question of sound value. Harris rejected the suggestion, saying it would be unfair to the insurance company. Harris testified without contradiction that his only relation to the affair was that he agreed to act as an appraiser, and that he did act disinterestedly in this capacity, and in no other. He had never had any relations of any kind with the insurance company other than those involved in his acting as appraiser on this particular occasion, and he swore that in making estimates of sound value and damage he gave what he thought was reasonable and fair on both items. The award on sound value was only $150 less than McDonald proposed to accede to, and if McDonald's judgment, the soundness of which defendant in error concedes, would permit an award of $1,800, then we think it manifest that a $1,650 award, being only $150 less, is not grossly inadequate, so as to be used as a circumstance impeaching the judgment of the other two as tainted with fraud or partiality or incompetency.

The only complaint made against the umpire was that he was incompetent, and was dominated by Harris. This charge seems to have rested upon the fact that Corbett had no technical knowledge of trucks, and that he, having no such knowledge, agreed with Harris and signed the award. The record contains no evidence competent to support the contention either as to Harris or Corbett.

We do not think the evidence tends to prove that Harris was not disinterested and impartial, as the policy provided he should be. The proof excludes the idea, we think, that Harris had any interest in the result, or was to obtain any benefits or compensation for rendering an award to Walter's injury. The proof also excludes the idea that he acted under the compulsion of a desire to unjustly aid the company or harm Walter. He had never borne any previous relation of any kind towards either. We therefore think he was both such a disinterested, and impartial appraiser as the agreement called for and as equity requires.

We do not consider the evidence sufficient to show that either Harris or Corbett was incompetent. The contract does not indicate that the parties to it meant by the word "competent" that the appraisers should be experts, and in the absence of some indication expressed by the agreement to the contrary we must hold that it does not import that meaning. "Competent," when generally applied to arbitrators, does not mean "expert." 5 C. J., 63.

[3] The fact that no notice of the appraisers' meeting was given Walter is immaterial. There was no provision in either the policy or the arbitration agreement for such notice, and there is no proof that Walter requested the appraisers or either of them to permit him to come before them and make any statement or offer any evidence. McDonald knew the make of the truck, its age, its original cash value, and the use to which it had been put. He revealed this knowledge to Harris, and most of it, it seems, to Corbett. All three of them inspected what remained of the truck after the fire, and Harris and McDonald got information about it from certain garage people, who had it in possession after the fire, and who, it seems, had partially dismantled it after the fire. The appraisal agreement containing no provision for notice, but leaving the appraisers free to pursue their own methods of obtaining information upon which to base their decision, we think the failure to give Walter notice, under all the facts of the case, contributes no support to defendant in error's claim that the award was invalid. Orient Life Ins. Co. v. Harmon, 177 S. W. 196.

[4] The fact that the umpire did not participate in the deliberations until after the disagreement between the appraisers arose did not affect the validity of the award. The policy and contract did not require his continuous participation from the beginning. By the terms of both the appraisal clause in the policy and the arbitration contract, he was to act only in matters of difference between the appraisers. And independent of such stipulations the law makes no other requirement.

The Supreme Court at an early date in Texas prescribed the guidance to be followed in cases like this and used this clear and cogent language:

"The court should interpose in this class of cases with great caution, and never, except in a case of urgent necessity to prevent the consummation of a fraud, or some great and manifest wrong and injustice. It is not every error or mistake of law or fact which will warrant the setting aside of an award. * * * The law therefore requires that, to authorize the interference of a court of equity in the case of awards, there must appear to have been fraud or partiality, misconduct or gross mistake committed on the part of the arbitrators, to the manifest injury of the party complaining." Payne v. Metz, 14 Tex. 60.

The evidence being insufficient to overcome the presumption of the validity of the appraisers' award, and the facts having been fully presented, it becomes our duty to reverse the judgment of the trial court and render judgment in conformity with the arbitrators' award; and it is accordingly so ordered.

Reversed and rendered.