## PROVIDENCE LLOYDS INSURANCE COMPANY

v.

## CRYSTAL CITY INDEPENDENT SCHOOL DISTRICT.

No. 04–93–00483–CV.

Court of Appeals of Texas,
San Antonio.

June 8, 1994.

Patricia Montgomery, Austin, Julie Kraatz, Law Office of Louis J. Sandbote, Dallas, for appellant.

Jesse M. Gamez, Sherry A. Muller, Law Offices of Jesse Gamez, Inc., Preston H. Dial, Jr., San Antonio, for appellee.

Before BUTTS, PEEPLES and GARCIA, JJ.[1]

BUTTS, Justice.

Providence Lloyds Insurance Company (Providence), insurer, appeals a judgment granted in favor of Crystal City Independent School District (the District), insured, following a jury trial regarding the disputed cash values and loss after a fire. The trial court awarded the District $222,199 which is the difference between the $1,237,000 jury verdict and a $1,014,801 sum previously paid by Providence.

In eight points of error, Providence argues that (1) the trial court erred by not enforcing the appraisal process and by permitting this case to be tried, and (2) various errors occurred during the trial regarding pleading and evidence, as well as the jury charge. By cross point, the District argues that it is entitled to attorney fees. We reverse and render.

The essential facts surrounding this controversy are undisputed. Following a February 9, 1992 fire at the Benito Juarez Elementary School, Providence and the District disagreed as to cash values of the loss. The District filed a lawsuit in March 1992, alleging both (1) bad faith by Providence regarding handling of the claim and (2) breach of the insurance contract and the resulting claim for damages. The trial court severed the bad faith cause of action. This appeal is from the judgment on the breach of contract cause of action.

By agreement of the parties, the trial court abated the suit for the parties to participate in the insurance policy appraisal process. Providence and the District had failed to agree on the cash values of the loss. After abatement, they engaged in the required ap-

1. Justice Orlando Garcia not participating.

praisal process with an umpire pursuant to the following insurance policy clause:

> Appraisal. In case the Insured and this Company shall fail to agree as to the actual cash value of the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the Insured or this Company, such umpire shall be selected by a judge of a district court of a judicial district where the loss occurred. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences only to the umpire. *An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.* Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties.

(emphasis added).

The District selected Joe Lopez as its appraiser; Providence selected Preston Harvey. The trial court appointed George Ozuna as the umpire, after the parties disagreed about the umpire choice.

Harvey (for Providence) initially determined the school could be restored for $851,149.98; Lopez (for the District) estimated repairs at $1,747,640.00. The record shows that of the forty-eight items in dispute, Harvey and Lopez then resolved their differences and agreed on the following twenty-six items:

| | | |
|---|---|---:|
| 1. | supervision | $24,000.00 |
| 2. | project manager & travel | 20,000.00 |
| 3. | portable commode | 600.00 |
| 4. | office trailer | 2,000.00 |
| 5. | dumpster rental & debris removal | 10,000.00 |
| 6. | crane rental | 2,000.00 |
| 7. | clean & seal for smoke odor | 21,202.04 |
| 8. | clean & treat concrete slab for odor | 1,500.00 |
| 9. | glass, windows & doors | 4,500.00 |
| 10. | suspended ceiling with insulation | 35,250.00 |
| 11. | laminated cabinets | 23,397.75 |
| 12. | remove & replace bath accessories & toilet partitions | 20,247.01 |
| 13. | chalk & tack boards | 9,100.00 |
| 14. | structural steel | 37,175.00 |
| 15. | clock system | 2,995.00 |
| 16. | a/c heat energy control (Honeywell) | 2,990.00 |
| 17. | remove & replace wall a/c & heating unit in Room 17 | 966.00 |
| 18. | general cleaning during and after construction | 6,133.00 |
| 19. | remove & replace wood window frames | 0.00 |
| 20. | plywood walls | 1,191.80 |
| 21. | marlyte wall in bath | 268.00 |
| 22. | repair concrete columns | 150.00 |
| 23. | remove & reset metal stairway and gate and burglar bars | 1,540.00 |
| 24. | remove & replace molding and trim | 4,493.50 |
| 25. | 6″ construction fence and gate | 2,475.00 |
| 26. | permits | 2,500.00 |
| | | $236,674.10 |

Ozuna then reviewed the twenty-two [2] remaining items, those upon which the appraisers were unable to agree, and assigned values to them, as follows:

**2.** We note that appellant states in its brief that *eighteen* items were disputed. However, the record reflects the twenty-two listed items.

| | | |
|---|---|---|
| 1. | builders risk | $    0.00 |
| 2. | power & telephone | 0.00 |
| 3. | project secretary | 0.00 |
| 4. | demolition of acoustic tile, ceiling, metal grid, insulation, walls, roof and carpet | 47,500.00 |
| 5. | masonry | 28,000.00 |
| 6. | metal stud walls, sheetrock, wall insulation, int. & ext. gyp board | 39,901.00 |
| 7. | doors & frames | 16,620.00 |
| 8. | hardware | 5,965.41 |
| 9. | plaster exterior | 16,950.00 |
| 10. | carpet, vinyl & base | 60,000.00 |
| 11. | painting & vinyl walls | 41,783.00 |
| 12. | remove & replace 4-ply built-up roof, roof insulation & sheetmetal | 111,000.00 |
| 13. | lockers | 0.00 |
| 14. | plumbing | 40,000.00 |
| 15. | fire alarm system | 14,405.00 |
| 16. | intercom | 7,560.00 |
| 17. | electric with switch gear and light fixtures | 93,380.00 |
| 18. | HVAC | 100,164.00 |
| 19. | clean metal ducts | 0.00 |
| 20. | performance bond | 21,278.75 |
| 21. | labor | 0.00 |
| 22. | labor (subs) | 0.00 |
| | | $644,507.16 |

Ozuna then added $132,365.38 as one lump sum which included overhead, insurance and profit, previously separated items. Additionally, Ozuna awarded $1,254.72 for "remove & replace wood window frames," one item upon which Harvey and Lopez had previously agreed (item 19, $0.00).[3] Thus, Ozuna awarded $778,127.26 for the disputed items as follows:

| | |
|---|---|
| twenty-two itemized items | $644,507.16 |
| overhead, insurance and profit | 132,365.38 |
| window frames | 1,254.72 |
| | $778,127.26 |

Ozuna added his value for the disputed items ($778,127.26) to the total sum upon which the appraisers previously agreed ($236,674.10), resulting in $1,014,801.36 as the total appraisal sum pursuant to the appraisal clause. It is significant that both Harvey and Lopez signed the umpire's determination, concurring with the cash value amounts, on the attached "Certificate of Concurrence." Providence immediately paid the District $1,014,801.30, and the District accepted payment and deposited the check.[4]

We note that the District did not amend its original petition with pleadings to set aside the award. The District's own appraiser, together with Providence's appraiser, concurred in the final amount as submitted by the umpire, thereby signifying their approval of the cost values of the items. The District amended its petition, alleging that Providence had made a "partial payment" ($1,014,801.30) for the loss, but that the District was entitled to recover an additional sum, $735,198.70, for repairs or replacement.

Subsequently, after a hearing, the trial court permitted the District to proceed with this lawsuit despite the appraisal process. In so doing, the court ruled, as a matter of law, that the umpire's final sum, which included the agreed amounts of the two appraisers and the umpire's own cost values, was not in substantial compliance with the contractual appraisal mandates. The court based this on the final appraisal document which denominated the twenty-six items agreed to by both parties' appraisers as "court award" rather than "agreed award." Other than calling the appraisers' agreed cost values "court award", the umpire set out the accurate agreed amounts. At trial the court excluded the evidence of the appraisal and the testimony of the umpire.

In its first point of error, Providence argues that the trial court erred by not enforcing its appraisal award and, thus, by permitting this breach of contract case to be tried. We agree.

In deciding Providence's point of error, we are guided by several well-settled principles. Appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable. *Scottish Union and Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 71 Tex. 5 (1888); *Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex.App.— Fort Worth 1992, writ dism'd by agr.). Every reasonable presumption will be indulged to sustain an appraisal award. *Continental Ins. Co. v. Guerson*, 93 S.W.2d 591, 594 (Tex. Civ.App.—San Antonio 1936, writ dism'd). An award entered by appraisers and an umpire can be disregarded if: (1) the award was made without authority; (2) the award was made as a result of fraud, accident or mistake; or (3) the award was not made sub-

---

3. The District does not complain of this $1,254.72 sum in their favor. Neither party having complained, we need not address it.

4. As previously noted, the trial court deducted this sum from the jury verdict, in its judgment.

stantially in compliance with the requirements of the policy. *Scottish Union,* 8 S.W. at 631; *Barnes,* 844 S.W.2d at 267. *See also Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 190 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.).

▪ In addition, well-settled contract principles apply. We seek to implement the intention of the parties as expressed in the language of the contract. *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727–28 (Tex.1981); *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980). The parties usually intend for each clause to have meaning and effect. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

▪ Further, whether a disputed provision is unambiguous or whether it can have more than one meaning is a question of law. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). We ascertain the subject appraisal clause is unambiguous, and neither party claims otherwise. Pursuant to the appraisal clause, Harvey and Lopez were charged to agree on all possible items, and then submit both disputed estimates to Ozuna. Ozuna, in turn, as the independent umpire, was to be the "tiebreaker."

Finally, we agree with the *Fisch* court which quoted a statement from 6 APPLEMAN ON INSURANCE LAW & PRACTICE, p. 368 (now § 3933, pp. 586–87):

> Where the policy provided that the appraisers should submit their differences to an umpire, it was held that the signature of the umpire was without validity unless and until the two appraisers failed to agree. * * * An umpire may act to settle differences between appraisers respecting the amount of a loss, when such differences become known to him. But an umpire, appointed to decide on matters of difference only, has no authority to pass on matters concerning which there was no difference between the appraisers. The function of an umpire who is to act in matters of difference only is not to coincide with one or the other of the appraisers, but he is to make his award independently of such estimates.

*Fisch,* 356 S.W.2d at 190.

▪ Applying these principles here, we must decide whether there was substantial compliance with the appraisal mandates. *See Fisch,* 356 S.W.2d at 190; *see also Barnes,* 844 S.W.2d at 267. The District does not allege lack of authority or fraud, mistake or accident regarding the appraisal award. *Id.*[5]

The District complains of two "flaws" in the umpire award and argues that they demonstrate the appraisal award was not made in substantial compliance with the appraisal provisions: (1) Ozuna exercised independent judgment with five items, instead of agreeing with one appraiser or the other; and (2) the

---

5. In *Barnes,* which was a suit by the insured to enforce an insurance appraisal award after the insurance company refused to pay the appraisal award, definitions of fraud, accident and mistake were submitted to the jury. The jury was asked whether it found from a preponderance of the evidence that the [appraisal] award should be set aside because of fraud, accident or mistake. The jury answered that *it should be set aside.* Another question asked the jury:

> [F]rom a preponderance of the evidence, [w]hat sum of money, if paid now in cash, would fairly and reasonably compensate [the insured] for his damages, if any, for the storm, hail, and resulting damage to the insured from the occurrence in question?

844 S.W.2d at 268.

The jury awarded a much lesser amount than the original appraisal award.

In the present case the jury answered three questions. The first question asked:

> Did [Providence] fail to fairly and reasonably compensate [the District] for the cost to repair or replace the [school] and thereby fail to comply with the insurance contract?
> ANSWER: Yes

Conditioned upon an affirmative response to number one, the second question was:

> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [the District] for the cost to repair or replace [the school]?
> "Cost to repair or replace" is the amount to repair or replace [the school] with material of like kind or quality, without deduction for depreciation and intended for the same occupancy and use.
> ANSWER: 1,237,000

The third question regarding the amount of attorney fees to award the District's attorneys was answered —0.00—.

agreed awards were included in Ozuna's award summary and were labeled "court award."

Regarding the five items which Ozuna, the umpire, calculated without agreeing with either appraiser, the record reveals that the District failed to object to the cost value appraisal on that ground or specify that particular basis for the trial court's ruling that Ozuna failed to substantially comply with the insurance policy terms. In line with the District's argument of non-compliance, the trial court did state its specific basis for its ruling: "[T]hat this Court ordered certain awards, was used as his foundation and he built on that foundation. And it must fail, it must fall. This Court never awarded any amount ... [E]ven if the language ["court" instead of "agreed"] were to be taken out ... still, it is not in substantial compliance even with the appraisal clause provisions as mandated by law. Motion to strike is granted."

The record contains no mention of the five items not being correctly determined, which the District now maintains demonstrates failure to substantially comply with the terms of the appraisal clause. The matter was raised for the first time on appeal. Since the District did not submit to the court that same objection to the appraisal award it now raises on appeal, the trial court did not rule upon it. We will address this argument, however, for the purpose of clarification.

In all but the following five items, Ozuna agreed with either Harvey's or Lopez's estimate: (1) builders risk, (2) doors & frames, (3) plumbing, (4) fire alarm system, and (5) HVAC.

The duty of the umpire under the terms of the insurance policy was to ascertain and determine, in the exercise of his own best judgment, the cash value of the items of property about which the appraisers had disagreed, independent of the findings of the appraisers, or either of them. This is what the umpire did, according to the record, and both appraisers agreed with his findings and signed the award, which included their agreed findings. *See Orient Ins. Co. v. Harmon*, 177 S.W. 192 (Tex.Civ.App.—Dallas 1915, writ ref'd).

The umpire is required to act with the appraisers in matters of difference. He is a third appraiser. If the three are of one mind, or if any two of them are in accord as to value and loss, the appraisal award is a finality. *See Dennis v. Standard Fire Ins. Co.*, 90 N.J.Eq. 419, 107 A. 161 (1919). In expounding on the duties of an umpire acting pursuant to a similar contractual provision, the court wrote:

It was hardly to be expected that the appraisers would agree in all matters. They were partisans, within bounds, but were nevertheless unbiased and unprejudiced and disinterested within the meaning of the contract of insurance.

\* \* \* \* \* \*

The question still is, Was the umpire guilty of misconduct in appraising the loss on the 17 items at figures beyond the limits fixed by the appraisers and in discarding the estimates of the appraisers as to the sound value of one of the articles? ... Where an umpire ... exceeds his authority, the effect of his act is the same whether it was done consciously or by mistake, as in either case his award was void....

The position taken by the complainants is, and they contend, that, as the umpire was to act "in matters of difference only," his function was to coincide with one or the other of the appraisers or to somehow warp his judgment between the high and low figures that marked their differences. The position is not sound.

\* \* \* \* \* \*

[I]f the three are of one mind, or if any two of them are in accord as to sound value and loss, the award is a finality. Manifestly, it would have been an abuse of authority had the umpire arbitrarily confined himself within the limits of the appraisers' estimates.

*Dennis*, 107 A. at 162–63. *Accord Atlas Constr. Co. v. Indiana Ins. Co.*, 160 Ind.App. 33, 309 N.E.2d 810 (1974).

Concerning the same contention made in the present case by the District, we find that in acting independently as to the disputed values, the umpire did not exceed the author-

ity conferred upon him. On the contrary, it was the duty of the umpire under the terms of the contract of insurance to ascertain and determine, in the exercise of his own judgment and as the result of his own investigation, the cost values of the disputed items, independent of the findings of the appraisers, or either of them.

Finally, regarding this contention, the parties concurred in the result. Not one, but both the appraisers agreed with the final appraisal award, making it a binding one. Following this, the District accepted the payment of the award. As noted previously, the District did not file suit to set aside the award.

■ Regarding the District's complaint about the column labeling on Ozuna's report, the record shows that Ozuna labeled the column listing these twenty-six sums, upon which the appraisers had agreed, as "court award." The record supports the argument that this list should have been appropriately titled "agreed award." However, though arguably confusing, this labeling does not render the appraisal award not in substantial compliance.[6] Here the record is clear that Harvey and Lopez agreed on these twenty-six items and that Ozuna examined *only* the disputed twenty-two items. We hold the appraisal award was the intended result.

■ The District argues that we cannot respond to point of error one without Ozuna's entire deposition, which the trial court considered at the pre-trial hearing at which it excluded from evidence the appraisal award. We disagree. Providence brought forth relevant portions of Ozuna's deposition with its bill of exception at trial when it argued that the appraisal award should be enforced. The record is clear that Harvey

and Lopez agreed on twenty-six items and that Ozuna was authorized to and did examine only the disputed twenty-two items. Also, we need not go behind Ozuna's award and analyze his mental processes. *See Continental,* 93 S.W.2d at 594.

■ We believe the entire record before us demonstrates the appraisal was conducted in a fair and proper manner, and the award was determined, after full investigation by both appraisers and the umpire. There was no partiality or collusion shown; the appraisers and umpire acted in an honest and conscientious manner. Under these circumstances the trial court was not warranted, in effect, in setting aside the appraisal award.

Providence filed its motion to enforce the appraisal award after trial began. It stressed that the parties entered into the appraisal process, a condition precedent to recovery under the terms of the policy. The District participated, accepted the appraisal award, and received the proceeds. Providence cited the "loss payable clause" of the policy which required the insurer to pay the appraisal award within 60 days after it was filed, and it complied. It asserted the District failed to timely contest the appraisal award by a suit to set aside and had waived that right. In its motion for judgment n.o.v., Providence again argued that the appraisal award should have been enforced by the court. Also it argued that there was no evidence of breach of contract. Our previous discussions and rulings demonstrate that we agree with the first argument. Therefore point of error one is sustained. We have no need to address the remaining points of error.

---

6. Nor do we believe that the mere column labeling gives rise to a "mistake." This is illustrated by prior case law. *See Providence Wash. Ins. Co. v. Farmers Elevator Co.,* 141 S.W.2d 1024, 1026–27 (Tex.Civ.App.—Amarillo 1940, no writ) (trial court judgment setting aside an award by two appraisers and an umpire reversed and rendered in part because there was no mistake—award was intended result); *Continental,* 93 S.W.2d at 594 (court cannot concern itself where the award embodies the appraisers real judgment); *Camden Fire Ins. Ass'n v. McCain,* 85 S.W.2d 270, 271

(Tex.Civ.App.—San Antonio 1935, writ dism'd) (award not set aside where no evidence of interest, bias or prejudice); *Gulf Ins. Co. of Dallas v. Pappas,* 73 S.W.2d 145, 146–47 (Tex.Civ.App.—San Antonio 1934, writ ref'd) (court will not substitute its own award for that of the appraisers unless the mistake is one by which the award fails to operate in a way the appraisers intended); *Home Ins. Co. v. Walter,* 230 S.W. 723, 724 (Tex.Civ.App.—Dallas 1921, no writ) (an award which is the result of fraud, mistake or accident means one which was made by appraisers who were incompetent, interested or partial).

By cross point the District argues that it was entitled to $123,700 in attorney fees, despite the jury's "0.00" answer as to a reasonable fee for necessary service by the District's attorneys. Because of our disposition of the first point of error, we need not address this point.

The judgment is reversed and judgment is rendered that the appraisal award made pursuant to the provisions of the insurance contract is binding on the District and that the District take nothing in this suit.