# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 17, 2013

Lyle W. Cayce
Clerk

No. 12-40635

TMM INVESTMENTS, LIMITED.,

> Plaintiff–Appellee–Cross Appellant

v.

OHIO CASUALTY INSURANCE COMPANY,

> Defendant–Appellant–Cross Appellee

Appeals from the United States District Court
for the Eastern District of Texas

Before JOLLY, DAVIS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This appeal arises out of an insurance dispute between TMM Investments, Ltd. ("TMM"), which owned a shopping center, and Ohio Casualty Insurance Co. ("OCIC"), which insured the property. The property was damaged in a hailstorm, but the parties disagreed about the extent of the damage. An appraisal was conducted according to the terms of the insurance contract, but TMM was not pleased with the appraisal award and sued to have the award declared invalid. The district court set aside the appraisal award and had the case proceed to trial for liability and coverage determinations. An advisory jury assessed a damage award, and after a bench trial on the remaining issues, the district court delivered a number of findings of fact and conclusions of law,

12-40635

including that OCIC had breached the insurance contract and that TMM was entitled to damages, attorney's fees, and prejudgment interest. OCIC appeals the district court's order setting aside the appraisal award and the district court's findings of fact and conclusions of law. TMM appeals the district court's determination that TMM was entitled to only the actual cash value of the damage, rather than the replacement cost, and the district court's failure to award appellate attorney's fees. Because we find that the original appraisal award should not have been set aside, we reverse.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

TMM owns a shopping center ("Liberty Square") in Texarkana, Texas, which was insured by OCIC under a policy that was in force from June 1, 2005 to June 1, 2006. According to TMM, the roof of the Liberty Square property was severely damaged when a hailstorm passed through the area on or around June 6, 2005. TMM notified OCIC of the damage around March 30, 2007. TMM conducted an assessment of the damage and estimated it to be between $654,796 and $955,910. OCIC's engineers, on the other hand, estimated the damage to be only around $17,949. OCIC made TMM a payment offer on the basis of that estimate. TMM filed a sworn proof of loss for $679,725.68 on April 9, 2008.

Because the disparity between the parties' estimates was so great, TMM refused the payment offer and invoked the Appraisal Property Loss Conditions section of the insurance policy, which reads, in pertinent part:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot

2

> agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

The appraisal process initially encountered a number of delays, but ultimately TMM and OCIC appointed Clifford Crites and Mitchell Butler as their respective appraisers. Crites and Butler designated Gary Boyd to serve as umpire. In March 2009, Crites, Butler, and Boyd began their appraisals. On April 13, Butler sent Boyd and Crites an e-mail that read:

> Gentlemen,
> While I appreciate and do not question the [] directions, warnings and procedures quoted below from the various expert agencies, the insurance issue remains what was damage[d] by the storm/hail and what is the reason the moisture levels are what they are. It is my position that from the roofing stand point the old aluminum coating was scuffed and displaced by the storm. The membrane was not damaged. The water infiltration was not as a result of the storm and the subsequent interior water damage resulting from that infiltration is not covered under the policy. It is my understanding that the policy would only cover interior damage if there was not a covere[d] peril related opening(s) in the roof. I feel confident in my position on this matter but ask my client for confirmation and advi[c]e. Once I have the confirmation I will issue an estimate that cover[s] all item[s] I attribute to the storm and my recommended quantification of expense.

On July 15, citing concerns over the way the appraisal was being conducted, Crites resigned.

12-40635

On July 29, 2009, Boyd issued an appraisal award, which Butler also signed, listing the "Replacement Cost" of the damage to Liberty Square as $73,014.83, and the "Actual Cash Value" of the loss as $49,632.63. The award contained line items for "Clean and coat modified [illegible] roof 188 sqs," "Repair & coat EFIS," and "Replace and paint aluminum shingles," but apparently the final figure was not inclusive of any estimate for damage to the roof membrane or to the skylights. Boyd, in drawing up the award, also chose to exclude damage to Liberty Square's heating, ventilation, and air-conditioning (HVAC) system because he did not believe the damage affected the unit's operation, even though Crites and Butler had both stated in their own appraisal awards that the HVAC system had sustained $2,794.80 worth of damage. At some point, OCIC tendered payment for the "Actual Cash Value" listed in the award Boyd issued, less the policy deductible. After TMM notified OCIC that the award had excluded the HVAC damage, OCIC sent TMM a check for $51,427.43, the amount of the appraisal award plus the agreed-upon $2,794.80 damage to the HVAC system. Because it took issue with the appraisal process and award, TMM refused the money.

TMM then sued OCIC in state court on August 21, 2009, seeking a declaratory judgment pursuant to the Texas Declaratory Judgments Act that the appraisal process was flawed and that the appraisal award should be set aside. TMM additionally alleged that OCIC had breached the terms of the insurance contract by failing "to pay any claim loss in a timely manner when liability and loss had become reasonably clear."[1] OCIC timely removed the case to federal

---

[1] The complaint also contained claims for breach of fiduciary duty and violations of the Texas insurance code but TMM later agreed to reserve those issues for a separate trial, to be held once causation, damages, and coverage issues had been resolved.

12-40635

court on diversity grounds.[2]  *See* 28 U.S.C. § 1332(a) (2013).  The parties took discovery, and Boyd, Butler, and Crites each gave sworn depositions.  In his deposition, Butler testified that he believed some of the damage to Liberty Square's skylights had been caused by projectiles from inside the building such as bullets or rocks, rather than hail.

On January 31, 2011, OCIC moved for summary judgment.  TMM in turn filed a cross-motion for partial summary judgment on February 1, 2011, arguing that the appraisal award should be set aside because the appraisers had erred in a number of ways.  First, TMM argued that Boyd, the umpire, had exceeded his authority when he improperly excluded damage to Liberty Square's HVAC system.  *See Fisch v. Transcon. Ins. Co.*, 356 S.W.2d 186, 189 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.) ("[T]he umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him . . . .").  Second, TMM argued that Butler and Boyd, in considering whether it had been hail, or instead wind, improper installation, and deterioration that had caused the damage to Liberty Square's roof, had "improperly considered causation and coverage issues" in arriving at the appraisal award.[3]  Third, TMM claimed that Boyd and Butler had ignored pertinent evidence in arriving at their appraisal award.

On March 25, 2011, the district court granted partial summary judgment for TMM, finding that the appraisal award was invalid and should be set aside.  The district court agreed with TMM that the appraisal panel had exceeded the

---

[2] The original complaint also included Boyd and Butler, who are Texas domiciliaries, as defendants, but TMM voluntarily dismissed all claims against them pursuant to a settlement agreement, creating complete diversity between the parties.

[3] As with similar insurance policies, TMM's policy did not cover wear and tear.

scope of its authority, first, because Boyd was not authorized to exclude the HVAC damage from the appraisal award, and second, because Butler and Boyd improperly considered causation and coverage issues when evaluating the damage to certain parts of the property, namely the roof membrane and skylights, citing *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 685 (Tex. App.—Dallas 1996, writ denied). The court determined that "[t]he case [would] proceed to trial on matters of causation, liability, and damages[,]" because "[i]t would be inappropriate to remand this matter for a new appraisal determination."

The district court empaneled an advisory jury, which eventually found that it would cost $654,795.84 "to repair and replace Liberty Square Shopping Center property damaged by the hailstorms of June 6, 2005, November 27, 2005, and/or May 16, 2006." The district court then conducted a bench trial, and issued its findings of fact and conclusions of law on November 15, 2011. The court concluded that OCIC had breached the terms of the insurance policy and that TMM was entitled to "the actual cash value of the damage: $445,261.17," or sixty-eight percent of the replacement cost. The court also awarded TMM attorney's fees, court costs, expert fees, and prejudgment interest running from October 6, 2008. OCIC moved for a new trial, but the district court denied the motion. OCIC and TMM both timely appealed.

## II. DISCUSSION

Both parties have raised a number of issues on appeal, many of which are contingent on the outcome of the dispute over the validity of the appraisal award. We hold that the appraisal award was incorrect in that it excluded damage to the HVAC unit from the award, but that the rest of the award should remain unaffected by this determination. The appraisers did not exceed their authority when they considered causation issues, and therefore the appraisal

award should not have been set aside. OCIC thus was only obligated to pay the amount articulated in the award, plus the cost of repair for the HVAC system. OCIC therefore fulfilled the terms of the insurance contract when it tendered the amount articulated in the award and the cost of the repair to the HVAC system to TMM, and the district court erred when it determined OCIC had breached the insurance contract. Accordingly, the district court's award of attorney's fees and prejudgment interest to TMM is also reversed. Because we hold that there was no breach of contract, the issues raised in TMM's cross-appeal are moot.

## A.    Standard of Review and Applicable Law

"We review a grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Pierce v. Dep't of the U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted).

Because this case was removed to federal court on diversity grounds, Texas substantive law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). "To determine issues of state law, we look to final decisions of the state's highest court, and when there is no ruling by that court, then we have the duty to determine as best we can what the state's highest court would decide." *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 238 n.5 (5th Cir. 2012) (citation omitted). "In making an [*Erie*] guess in the absence of a ruling from the state's highest court, this Court may look to the decisions of intermediate appellate state courts for guidance." *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citation omitted).

## B.    Analysis

"Because courts 'seek to implement the intention of the parties as expressed in the language of a contract,' it has long been the rule in Texas that 'appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable.'" *Richardson v. Allstate Tex. Lloyd's*, No. 05-06-00100-CV, 2007 WL 1990387, at *3 (Tex. App.—Dallas July 11, 2007, no pet.) (mem. op.) (alteration omitted) (quoting *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ)); *see also Lundstrom v. United Servs. Auto. Ass'n*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Continental Ins. Co. v. Guerson*, 93 S.W.2d 591, 594 (Tex. Civ. App.—San Antonio 1936, writ dism'd). An appraisal award will be upheld unless at least one of three circumstances exists: (1) the award was made without authority; (2) the award was the result of fraud, accident, or mistake; or (3) the award was not made in substantial compliance with the terms of the contract. *Crystal City*, 877 S.W.2d at 875–76. "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *Lundstrom*, 192 S.W.3d at 87.

*1. Exclusion of the HVAC system damages*

The district court was correct in determining that the umpire had no authority to exclude the HVAC damages estimate from the appraisal award. Texas courts have clearly held that unless there is a discrepancy between the findings of the two appraisers appointed by the parties, there is no duty for the umpire to perform. *See Fisch*, 356 S.W.2d at 189–90 ("Since the umpire's power to act is conditioned upon a disagreement between the appraisers and the submission of their differences only to him, we are of the opinion that the award,

which was signed by only one appraiser and the umpire who had no authority to act, is invalid."); *Crystal City*, 877 S.W.2d at 876 ("[A]n umpire, appointed to decide on matters of difference only, has no authority to pass on matters concerning which there was no difference between the appraisers." (quoting *Fisch*, 356 S.W.2d at 190)). Here, no party disputes that Butler and Crites agreed as to how much damage the HVAC system sustained. Boyd was thus without authority to strike it from the appraisal award.

However, Boyd's error does not justify, on its own, throwing out the entire appraisal award. The district court had no occasion to decide the issue of what should be done in the event the HVAC damages omission constituted the only error on the part of the appraisal panel, because it also found that the appraisal panel's consideration of causation rendered the appraisal invalid in its entirety. Because we find that the award is otherwise unobjectionable, *see infra* Part II.B.*2.*, we must determine if, given Boyd's error, the "valid" portion of the award should stand. While Texas courts have never addressed the issue, the related case law suggests that minor mistakes that do not taint the entire award should not frustrate the parties' intent to be bound by the appraisal provision of their contract.

In *Crystal City*, the trial court set aside an appraisal award because a section in the award listing damages agreed upon by the appraisers had been mislabeled. 877 S.W.2d at 876–77. The court of appeals, while acknowledging the error, nonetheless reinstated the award and noted that "[i]f the [umpire and the two other appraisers] are of one mind, or if any two of them are in accord as to value and loss, the appraisal award is a finality." *Id.* at 877–78 (citation omitted). A federal district court case interpreting Texas law also suggests that the acceptable portions of the award should continue to bind the parties. In *MLCSV10 v. Stateside Enterprises, Inc.*, the court explained, "To the extent the appraisal award implicitly determined that the ductwork damage was not

covered . . . , the plaintiffs have provided a sufficient basis for setting aside that part of the appraisal award. There is, however, no basis for setting aside the entire award or any other part of it." 866 F. Supp. 2d 691, 707–08 (S.D. Tex. 2012). The court went on to say in a footnote, "[A] finding that appraisers were biased would require setting aside the entire award. But as all parties admitted . . . , there is no precedent that compels setting aside an entire appraisal award based on a finding that one part of the award was incomplete or implicitly determined a coverage issue." *Id.* at 708 n.6. Here, there is no contention that Boyd lacked authority to speak on the numerous damage items that Butler and Crites disagreed about. We do not believe the omission of the HVAC damage from the award justifies ignoring the intent of the parties to have damages issues submitted to and decided by an appraisal panel. *Cf. State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009) ("Like any other contractual provision, appraisal clauses should be enforced."). We therefore uphold the remainder of the award.[4]

*2. Whether the appraisal panel exceeded its authority in considering causation*

The district court, in its order setting aside the appraisal award, concluded that the appraisal panel had exceeded its authority in "attribut[ing] the roof membrane damage to improper installation and the skylight damage to rocks thrown from below." The district court relied primarily on a Texas Court of Appeals case, *Wells v. American States Preferred Insurance Co.*, 919 S.W.2d 679 (Tex. App.—Dallas 1996, writ denied), in coming to that conclusion. According to the district court, *Wells* "held that the appraisal panel's responsibility is simply to determine the value of property damage and that 'questions of what caused or did not cause the loss are questions to be decided by the court.'"

---

[4] The appraisal award amount *and* the HVAC damage amount were tendered to TMM, but it appears TMM never cashed the check. If this is the case, OCIC is obviously required to furnish that amount to TMM again.

(quoting *Wells*, 919 S.W.2d at 685). In *Wells*, the appraisal panel unanimously concluded that the claimant's house had suffered damage "due to foundation movement in the amount of $22,875.94[,]" but that the amount of damage attributable to a plumbing leak that had allegedly created the foundation movement—which the policy would have covered—was zero. 919 S.W.2d at 682. The trial court approved the appraisal award, but the appeals court reversed, concluding that "the appraisal section of [the policy] establishes an appraisal procedure to determine the dollar amount of the insured's loss only, and that it does not authorize or empower the appraisal panel created thereunder to determine what caused or did not cause that loss." *Id.* at 685. The appraisal award was therefore made without authority, and the court remanded the case to the trial court for a new trial. *Id.* at 686–87.

OCIC argues, however, that the district court did not take full account of a more recent Texas Supreme Court case that modifies the scheme established by *Wells*. That case, *State Farm Lloyds v. Johnson*, does indeed provide the controlling law on the issue of the scope of the appraisal panel's authority. 290 S.W.3d 886 (Tex. 2009). In *Johnson*, the claimant alleged that her roof had been damaged in a hailstorm and filed a claim with her insurance company. *Id.* at 887. When the insurance company provided a much lower damage estimate than her claim requested, the claimant invoked the policy's appraisal provision. *Id.* at 887–88. The insurance company, however, argued that appraisal should not be required because the panel would necessarily have to decide issues of causation, not "amount of loss." *Id.* at 888. The claimant then filed suit seeking a declaratory judgment compelling appraisal. *Id.*

The Texas Supreme Court began by repeating the rule, established in earlier case law, that "*damage* questions [are] for appraisers and *liability* questions [are] for the courts[.]" *Id.* at 889. It quickly acknowledged, though, that "[t]he line between liability and damage questions may not always be

clear[,]" *id.* at 890, and that "[c]ausation relates to both liability and damages because it is the connection between them[,]" *id.* at 891–92.

The court discussed both *Wells* and *Lundstrom v. United Services Automobile Ass'n*, a case somewhat at odds with *Wells,* in which the appeals court upheld an appraisal award that considered damages from an "initial wetting" but not damages from mold. *Id.* at 892; *see Lundstrom*, 192 S.W.3d at 89 ("The cases cited in *Wells* stand for the narrower proposition that appraisers exceed their authority when they engage in making the legal determination of what is or is not a covered loss based on their determination of what caused the loss or a portion of it."). The *Johnson* court reconciled these cases as follows:

> Appraisers can decide the cost of repairs in [the context of cases like *Wells*], but if they can also decide causation there would be no liability questions left for the courts. By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability. . . . In [the context of cases like *Lundstrom*], courts can decide whether water or mold damage is covered, but if they can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers. The same is true when the causation question involves separating loss due to a covered event from a property's pre-existing condition. . . . If State Farm is correct that appraisers can never allocate damages between covered and excluded perils [such as wear and tear], then appraisals can never assess hail damage unless a roof is brand new.

*Johnson*, 290 S.W.3d at 892–93. The court concluded that appraisal should be compelled, noting that "[a]ny appraisal necessarily includes some causation element, because settling the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.* at 893.

12

At the very least, *Johnson* arguably establishes that appraisal panels are within their rights when they consider whether damage was caused by a particular event or was instead the result of non-covered pre-existing perils like wear and tear. Indeed, this is the way many subsequent cases have interpreted *Johnson'*s guidance. *See, e.g.*, *MLCSV10*, 866 F. Supp. 2d at 705 ("Lochridge's causation evaluation involved no more than 'separating loss due to a covered event from a property's pre-existing condition.'" (quoting *Johnson*, 290 S.W.3d at 892)); *Essex Ins. Co. v. Helton*, 4:10-cv-2229, at *2 (S.D. Tex. Jan. 24, 2012) (slip op.) ("However, where there are different types of damage to different items of property, or where the property is not new and has suffered wear and tear, appraisers may have to decide causation in order to decide damages."). To the extent the appraisers merely distinguished damage caused by pre-existing conditions from damage caused by the storm, they were acting within their authority.

The district court appears to have concluded that *Johnson* required setting aside the appraisal award because "TMM contends the storm damaged the skylights, but [OCIC] contends rocks caused the damage. . . . TMM contends the storm damaged the roof membrane, but [OCIC] contends the roof membrane was damaged due to improper installation. The parties have alleged different causes for the same injuries." There are two principal problems with this conclusion. First, it is not entirely clear from the record what reasons Butler or Boyd had for excluding certain items from the award. TMM itself acknowledges that multiple causes of damage, including wear and tear, have been alleged. Its summary judgment motion stated, "Here, the moisture levels were allegedly caused by hail storm, wind storm and/or windstorm, improper installation and deterioration." If that is the case, *Johnson* appears to foreclose setting aside the appraisal award—it was entirely appropriate for the appraisers to consider whether damage was caused by these pre-existing conditions.

Second, it appears the district court misapplied the law even if its statements about the reasons for Butler's and Boyd's exclusions are accurate. *Johnson* stated, "[W]hen different causes are alleged for a single injury to property, causation is a liability question for the courts. . . . By contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Johnson*, 290 S.W.3d at 892. Putting aside the question of why this distinction should matter, even according to the facts as the district court found them, this is a case of the second variety because damage is alleged to have occurred to the roof membrane *and* the skylights. Additionally, the closeness of the facts in *Johnson* to those at bar—both involved roofs damaged in part by hailstorms—militates in favor of arriving at a holding similar to the one arrived at by the *Johnson* court. Coupled with the requirement that we indulge "every reasonable presumption to sustain an appraisal award," *Johnson* appears to compel reversal of the district court's order setting aside the award in this case.

### 3. Claims related to breach of contract

Because the appraisal award was not invalid, when OCIC tendered the amount articulated in the appraisal award plus an amount for the damage to the HVAC system, it fulfilled the terms of the insurance contract. *See Probus Props. v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. ref'd) (explaining that tendering a check "suspends the obligation *until dishonor of the check or until it is paid or certified*" (emphasis added) (internal quotation marks omitted)). Because TMM thus did not bring a "valid claim" for breach of contract, it should not have been awarded attorney's fees, and we reverse the district court's determination to that effect. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (2013). Similarly, because TMM was not a "prevailing party" in its breach of contract claim, we reverse the district court's award of costs to TMM. *See* Fed. R. Civ. P. 54(d); *Carter v. Gen. Motors Corp.*, 983 F.2d 40, 43

(5th Cir. 1993) (explaining that "federal procedural law ordinarily governs the award of costs in diversity cases").  Because the claims in TMM's cross-appeal are uniformly related to the breach of contract found by the district court, we dismiss these claims as moot.

## III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision and REMAND the case so that the district court may reinstate the appraisal award, including the HVAC damage amount of $2794.80.